

FILED

JUL 2 2 2013

U.S. COURT OF
FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE HANOVER INSURANCE COMPANY | ) ) ) | |
| Plaintiff, | ) ) | No. 13-500 C |
| v. | ) ) ) | |
| THE UNITED STATES | ) ) | |
| Defendant. | ) ) ) | |

## COMPLAINT FOR AFFIRMATIVE AND DECLARATORY RELIEF

Plaintiff, The Hanover Insurance Company ("Hanover"), by and through the undersigned counsel, file the following Complaint against Defendant, the United States, and allege as follows:

### JURISDICTION

1. Jurisdiction is conferred by 28 U.S.C. §1491.

2. This action is brought pursuant to the Tucker Act 28 U.S.C. §1491 and 41 U.S.C. §7101 *et seq.* (the Contract Disputes Act of 1978, hereinafter referred to as the "Contract Disputes Act") and under the dispute provisions in the parties' Contract.

3. This action is filed timely pursuant to 41 U.S.C. §§7104(b)(1) and 7104(b)(3).

4. Hanover has the right and standing to maintain this action and to pursue the claims of Lodge Construction, Inc. ("Lodge") arising from, under, or for breach of contract pursuant to its reserved and assigned rights, as recognized by the Government in the Tender and Release Agreement, and by Hanover's equitable right of subrogation.

### THE PARTIES

5. Plaintiff, Hanover, is a corporation organized under the laws of the State of Delaware and is in the business of issuing construction surety bonds.

6.      Defendant, the United States, acting by and through the Department of the Army, Corps of Engineers, is a federal body politic authorized by law to enter into contracts for the procurement of goods and services (the "Government" or "USACE").

**PROJECT BACKGROUND**

7.      On or about June 1, 2010, the USACE issued an Invitation for Bid ("RFP") for the Phase I of the Site 1 Impoundment Area in Palm Beach County, Florida (the "Project"). The purpose of the Project was to capture and store excess water that was previously being discharged into a canal abutting the Project site (Hillsboro Canal) for use when water availability is low in the dry season. It was also intended to reduce wasteful discharges into the Intracoastal Waterway and reduce water supply demands on nearby Lake Okeechobee and the Loxahatchee Refuge.

8.      Bidders for the Project were provided with a bid solicitation package that included extensive amounts of geological data that the Government had procured and which included soil boring tests and test pits for use in the performance of slug tests.

9.      On or about August 24, 2010, the United States, acting through a Contracting Officer of USACE, executed a Fixed-Price Contract in the amount of $44,125,000 with Lodge, Contract No. W912EP-10-C-0042 (the "Contract"), for the completion of the Project. The Contract was issued pursuant to the Government's Small Business Demonstration Program.

10.     Pursuant to the Contract, Lodge was to complete the Project within seven hundred and twenty (720) days from the Notice to Proceed ("NTP"). The NTP was issued on October 20, 2010, resulting in a required completion date of October 9, 2012. With subsequent time extensions approved by the Government, the Contract completion date was extended by one hundred and sixteen (116) days resulting in a revised completion date of February 2, 2013.

11. Based on the geological data and test results that the Government provided to it, Lodge developed its design of and methodology for the completion of the Project.

12. After its sheetpile wall design was approved, Lodge began installing and completed the installation of the sheetpile wall in Sections 1 and 2 of the Project. The sheetpile wall in these sections functioned flawlessly until March 16, 2012 at which time, and at two very discrete locations in Section 2, the wall at these locations failed simultaneously. On that same date, Lodge put USACE on notice that the wall failure in these locations was the direct result of a differing site condition.

## SURETY BOND BACKGROUND

13. The allegations set forth in paragraphs 1 through 12 are incorporated by reference as if fully set forth herein.

14. On or about August 24, 2010, Hanover issued a performance bond (the "Performance Bond") and a payment bond (the "Payment bond"), each bearing Bond No. 1921209 and each in the penal sum of $46,283,204.14 on behalf of Lodge, as Principal, and in favor of the Government, as Obligee, in connection with the Contract.

15. By letter dated July 23, 2012, the Government advised Lodge that it was terminated for default (the "Termination") and made demand on Hanover to perform in accordance with its obligations under the Performance Bond.

16. In response to the Government's demand on Hanover pursuant to the Performance Bond, the Government and Hanover agreed to a complete and final resolution of the obligation of Hanover under the Performance Bond, pursuant to which Hanover procured and tendered Munilla Construction Management, LLC (the "Tender Contractor") to the Government to perform the work remaining under the original Contract.

17. On or about December 31, 2012, Hanover and the Government entered into an agreement (the "Tender and Release Agreement") pursuant to which Hanover procured and the Government accepted the Tender Contractor to perform the remaining allegations of Lodge under the original Contract. A copy of the Tender and Release Agreement is attached hereto as **Exhibit A**.

18. The Tender and Release Agreement expressly preserved all of Lodge's rights, including, but not limited to, Lodge's right to contest the validity of the Government's Termination. Specifically, paragraph 14 of the Tender and Release Agreement provides in relevant part that:

> The surety does not waive Former Contractor's [Lodge's] rights, if any, to contest the validity of the default or as to any other matter, rights, claims or defenses (whether related to the Project or not) that former Contractor may have against any person, firm or entity including, without limitation, the USACE.

19. The Tender and Release Agreement also expressly preserved all of Hanover's rights. Specifically, paragraph 14, captioned "Reservation of rights," provides in relevant part that: "nothing in this Agreement shall be deemed to waive, alter, limit, modify, or abridge any of Surety's rights, claims or defenses (whether related to the Project or not) against any person, firm or entity (including, without limitation, the USACE) under the Bonds, the law, agreements of indemnity, or otherwise." The reservation of rights paragraph, as recognized by the Government, expressly includes "the right of Surety to pursue as its own any matter, right, claim or defense of Former Contractor."

20. Pursuant to the terms of the Tender and Release Agreement, the Tender Contractor was to perform the work remaining under the original Contract for the amount of $47,778,910 subject to adjustments by any change orders to the original Contract executed by the

Government and the Tender Contractor in accordance with the original Contract documents.

21.     Pursuant to the terms of the Tender and Release Agreement, Hanover paid the Government under the Performance Bond the amount of $23,995,183.86 which amount represented the completion price for the original Contract less the balance of the original Contract.

## COUNT I
### (WRONGFUL TERMINATION FOR DEFAULT – CONVERSION OF TERMINATION FOR DEFAULT AND TERMINATION FOR CONVENIENCE)

22.     The allegations set forth in paragraphs 1 through 21 are incorporated by reference as if fully set forth herein.

23.     On or about June 11, 2012 the USACE issued to Lodge a "CURE NOTICE" in which the USACE stated, in relevant part, as follows:

> We are now six hundred (600) days into the Contract and you have yet to make any significant progress towards completion due to the failure of your cofferdam walls. Since there are now less than 236 days remaining in your Contract, it no longer appears possible to complete the Contract within the allotted time.
>
> You are hereby notified that the Government considers your failure to provide an adequate cofferdam wall space design to allow performance of the work in a safe work environment a condition that is endangering performance of the Contract. Therefore, unless LCI [Lodge] provides a firm commitment and acceptable timeline to cure this condition with ten (10) days after receipt of this notice, the Government may terminate for default under the terms and conditions of the "Default Clause" of this Contract.

24.     By letter dated June 21, 2012, Lodge responded to the Government's cure notice and advised, in relevant part, that it was not the two isolated locations of sheetpile wall failure that were endangering the completion of the Project but rather the problems encountered with

respect to the removal of dewatering effluent from the Project and, specifically, the inability of the impoundment area soil to absorb such effluent as described in Count II.

25. On June 29, 2012, the Government issued to Lodge a "SHOW CAUSE NOTICE" in which it advised Lodge that the Government determined that it had failed to cure the conditions endangering performance of the Contract as described in the June 11, 2011 Cure Notice and that the Government was considering terminating the Contract. That letter then invited Lodge to respond to the Show Cause Notice within ten (10) days thereof.

26. By letter dated July 9, 2012, Lodge responded to the Government's Show Cause Notice. In that letter, Lodge again reiterated that:

> (1) Lodge's sheetpile wall design was proper and not defective in any way;
>
> (2) The Government's retroactive disapproval of the sheetpile wall design (after previously approving it) was wrongful;
>
> (3) The sheetpile wall's discrete failures were the result of a differing site condition; and
>
> (4) The delays that the Project had already suffered at the time of the sheetpile wall collapse were attributable to the inability of the 300 acre impoundment area to absorb dewatering effluent contrary to the Government provided geological data that would have lead any reasonable contractor to conclude that the soil in this area would be sufficiently permeable to absorb the anticipated volume of effluent.

27. By letter dated July 23, 2012, the Government advised Lodge that its Contract was "terminated for default due to your inexcusable failure to make progress on the work in order to complete the work by the Contract completion date pursuant to Clause FAR 52.249-10D (Fixed-Price Construction)." As seemingly additional grounds for termination, the letter also noted that Lodge "has failed to correct deficiencies to its sheetpile design as identified on March

29, 2012." Also on that date, the Government made demand on Hanover under its Performance Bond to either take over and complete the Project or tender a new contractor to do so.

28.     By Tender and Release Agreement dated December 31, 2012, the USACE and Hanover agreed that in exchange for a release, Hanover would pay the government $23,995,183.86, which amount represented the completion price for the Contract less the balance of the Contract. As part of that agreement, Hanover tendered as completion contractor, Munilla Construction Management, LLC who entered into a contract with the government to complete the contract for the lump sum price of $47,778,910.00.

29.     The Government's termination of Lodge's Contract was wrongful, arbitrary, issued in retaliation for the claims submitted by Lodge, and in bad faith.

30.     The Government was not justified in terminating Lodge for default.

31.     Any delay in Lodge completing its work on the Project arose from unforeseeable causes beyond its control and without its fault or negligence.

32.     Pursuant to the terms of the Contract and FAR 52.249-10(c), the termination for default shall be converted to a termination for convenience governed by FAR 52.249-2.

33.     Lodge's damages, as of the date of termination, are presently estimated to be at least $23,995,183.86.

34.     Hanover has fulfilled and satisfied all conditions precedent to the bringing of this action.

35.     Hanover is entitled to monetary damages.

## COUNT II
### (EQUITABLE SUBROGATION)

36.     The allegations set forth in paragraphs 1 through 35 are incorporated by reference as if fully set forth herein.

37. By reason of the principles of equitable subrogation, and Hanover's rights as completing surety, all funds due or to become due to Lodge pursuant to the original Contract are the property of Hanover and Hanover asserts an equitable lien against any such Contract funds.

38. Lodge is alleging, among other things, that the Government's termination of Lodge on the original Contract was wrongful, Lodge is owed the aforementioned monies pursuant to the wrongful termination claim referenced in Count I hereof seeking damages in excess of $23,995,183.86 (the "Wrongful Termination claim").

39. Hanover is entitled to an equitable lien on any amounts recovered by Lodge in connection with the Wrongful Termination Claim, and/or any other claim that has been or may be asserted by Lodge against the Government.

40. Hanover's equitable subrogation rights are in addition to, and not in lieu of Hanover's express right to pursue, in its own right, any claim of Lodge as acknowledged by the Government in the Tender and Release Agreement.

## COUNT III
## (ASSIGNMENT AND INDEMNITY)

41. The allegations set forth in paragraphs 1 through 40 are incorporated by reference as if fully set forth herein.

42. On or about April 14, 2009, Lodge, among others, executed an Agreement of Indemnity ("Indemnity Agreement"), a true copy of which is attached hereto as **Exhibit B**, in favor of Hanover.

43. Pursuant to the Indemnity Agreement, Lodge

    A. agreed to exonerate, indemnify and save Hanover harmless from and against every claim, demand, liability, cost, charge, suit, lodgment and expense which Hanover may pay, or incur . . .

      B.    In the event of a default on the Contract, assigned, transferred, conveyed and set over to Hanover all right title and interest of Lodge in and to the Contract including all monies retained, due, or due in the future on account of the Contract.

44.    Hanover faces claims by unpaid persons or entities that provided labor and material for the performance of the Contract.

45.    On information and belief, Lodge has or will assert claims against the Government for differing site conditions amounts and amounts for wrongful termination, including the amount tendered by Hanover.

46.    The Government was, or should have been, aware that Lodge made the assignment contained in the Indemnity Agreement as indemnity agreements such as the Indemnity Agreement are common to Government Contracts and by acceptance of the Performance and Payment Bond and by Execution of the Tender Agreement must be deemed to have consented to Lodge's indemnity obligations to Hanover and to Lodge's assignment to Hanover.

47.    In the event that Lodge obtains any recovery against the Government, the amounts recovered are the property of Hanover to which it has rights by reason of, inter alia, the Indemnity Agreement.

**WHEREFORE**, Hanover respectfully demands:

(a)    That this Honorable Court finds that the USACE, wrongfully terminated Lodge for default on the Project:

(b)    That this Honorable Court orders that the termination for default issued by the USACE, is converted to a termination for convenience, and, as such, Lodge and Hanover retain the right to present a final settlement termination proposal to the USACE, pursuant to FAR 52.249-2, including therein, but not limited to, all costs incurred by Lodge and Hanover (satisfying claims on the Payment and Performance Bonds) related to the wrongful termination for default;

(c) That this Honorable Court awards Hanover its costs, expenses, interest and attorney fees that they incurred as a result of the proceedings *sub judice* pursuant to the Equal Access to Justice Act (28 U.S.C. §2412 *et seq.*);

(d) That this Honorable Court awards Hanover the loss, cost and expense incurred under the Performance Bond and Payment Bond, which amount is presently estimated to exceed $23,995,183.86;

(e) That this Honorable Court issue an order declaring that Hanover has an equitable lien on all funds due or to become due in connection with the original Contract, including any amounts that may become due to Lodge as a result of any claims asserted or to be asserted against the Government relating to the Project which amounts are currently estimated to be in the amount of least $23,995,183.86; and,

(f) That this Honorable Court award Hanover any other relief which it deems just and proper.

PLAINTIFF,

THE HANOVER INSURANCE COMPANY

July 22, 2013   By: /s/ James M. Mulvaney
James M. Mulvaney, Esq.
McElroy, Deutsch, Mulvaney & Carpenter, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962
Phone: 973-993-8100
Fax: 973-425-0161