

| **SOLICITATION, OFFER, AND AWARD** *(Construction, Alteration, or Repair)* | 1. SOLICITATION NO. W912EP-10-R-0010-0011 | 2. TYPE OF SOLICITATION<br>☐ SEALED BID (IFB)<br>☒ NEGOTIATED *(RFP)* | 3. DATE ISSUED 18-Jan-2013 | PAGE OF PAGES 1 OF 30 |
|---|---|---|---|---|

**IMPORTANT - The "offer" section on the reverse must be fully completed by offeror.**

| 4. CONTRACT NO. W912EP-13-C-0008 | 5. REQUISITION/PURCHASE REQUEST NO. | 6. PROJECT NO. |
|---|---|---|

| 7. ISSUED BY          CODE | W912EP | 8. ADDRESS OFFER TO *(If Other Than Item 7)* CODE |
|---|---|---|
| USA ENGINEER DISTRICT, JACKSONVILLE<br>PRUDENTIAL OFFICE BLDG<br>701 SAN MARCO BLVD<br>JACKSONVILLE REGIONAL CONTRACTING CENTER<br>JACKSONVILLE FL 32207-8175 | | *See Item 7* |
| TEL:                    FAX: | | TEL:                    FAX: |

| 9. FOR INFORMATION CALL: | A. NAME C. Weston Worsham | B. TELEPHONE NO. *(Include area code)*    *(NO COLLECT CALLS)* 904-232-1921 |
|---|---|---|

## SOLICITATION

**NOTE: In sealed bid solicitations "offer" and "offeror" mean "bid" and "bidder".**

10. THE GOVERNMENT REQUIRES PERFORMANCE OF THE WORK DESCRIBED IN THESE DOCUMENTS *(Title, identifying no., date)*:

   PROJECT #114572, SITE 1 IMPOUNDMENT PHASE 1, PALM BEACH COUNTY, FLORIDA

   This contract is issued as a replacement contract for W912EP-10-C-0042 which was Terminated for Default and is re-procured under W912EP-13-C-0008 as agreed to in the Tender Agreement dated 31 December 2012 and its Amendment 01 dated 04 January 2013 is incorporated by reference.

   Munilla Construction Management, LLC dba MCM (Completion Contractor) has examined the project site, the prime contract, and plans submitted by the Former Contractor in performance under the prime contract. The Completion Contractor has fully informed itself of all the direct and indirect costs required for completion of the project in accordance with the terms of the contract.

   All terms, conditions, drawings, and specifications from W912EP-10-C-0042 are incorporated and are in force and effect.

11. The Contractor shall begin performance within __30__ calendar days and complete it within __640__ calendar days after receiving ☐ award, ☒ notice to proceed. This performance period is ☒ mandatory, ☐ negotiable. *(See* SECTION 00700 *.)*

| 12 A. THE CONTRACTOR MUST FURNISH ANY REQUIRED PERFORMANCE AND PAYMENT BONDS? *(If "YES," indicate within how many calendar days after award in Item 12B.)*<br>☒ YES ☐ NO | 12B. CALENDAR DAYS 10 |
|---|---|

13. ADDITIONAL SOLICITATION REQUIREMENTS:

A. Sealed offers in original and _____ copies to perform the work required are due at the place specified in Item 8 by __04:00 PM__ *(hour)* local time __08 Jul 2010__ *(date)*.  If this is a sealed bid solicitation, offers must be publicly opened at that time. Sealed envelopes containing offers shall be marked to show the offeror's name and address, the solicitation number, and the date and time offers are due.

B. An offer guarantee ☒ is, ☐ is not required.

C. All offers are subject to the (1) work requirements, and (2) other provisions and clauses incorporated in the solicitation in full text or by reference.

D. Offers providing less than __90__ calendar days for Government acceptance after the date offers are due will not be considered and will be rejected.

| NSN 7540-01-155-3212 | 1442-101 | **STANDARD FORM 1442** (REV. 4-85) Prescribed by GSA FAR (48 CFR) 53.236-1(e) |
|---|---|---|

| SOLICITATION, OFFER, AND AWARD (Continued) |
|---|
| (Construction, Alteration, or Repair) |

**OFFER** *(Must be fully completed by offeror)*

| 14. NAME AND ADDRESS OF OFFEROR *(Include ZIP Code)*<br>MUNILLA CONSTRUCTION MANAGEMENT DBA MCM<br>ALEXIS LEAL<br>6201 SW 70TH STREET<br>2ND FLOOR<br>MIAMI FL 33143 | 15. TELEPHONE NO. *(Include area code)*<br>305-541-0000 EXT. 112 |
|---|---|
| | 16. REMITTANCE ADDRESS *(Include only if different than Item 14)*<br><br>See Item 14 |
| CODE   0KCD4       FACILITY CODE | |

17. The offeror agrees to perform the work required at the prices specified below in strict accordance with the terms of this solicitation, if this offer is accepted by the Government in writing within _____ calendar days after the date offers are due. *(Insert any number equal to or greater than the minimum requirements stated in Item 13D. Failure to insert any number means the offeror accepts the minimum in Item 13D.)*

| AMOUNTS | SEE SCHEDULE OF PRICES |
|---|---|

18. The offeror agrees to furnish any required performance and payment bonds.

| 19. ACKNOWLEDGMENT OF AMENDMENTS |
|---|
| *(The offeror acknowledges receipt of amendments to the solicitation -- give number and date of each)* |

| AMENDMENT NO. | | | | | | |
|---|---|---|---|---|---|---|
| DATE | | | | | | |

| 20A. NAME AND TITLE OF PERSON AUTHORIZED TO SIGN<br>OFFER   *(Type or print)* Alexis Leal, Director of Corp Operations | 20B. SIGNATURE | 20C. OFFER DATE<br>1/10/13 |
|---|---|---|

**AWARD** *(To be completed by Government)*

21. ITEMS ACCEPTED:

# SEE SCHEDULE

| 22. AMOUNT<br>$47,778,910.00 | 23. ACCOUNTING AND APPROPRIATION DATA<br>See Schedule |
|---|---|

| 24. SUBMIT INVOICES TO ADDRESS SHOWN IN<br>*(4 copies unless otherwise specified)* | ITEM<br>Block 27 | 25. OTHER THAN FULL AND OPEN COMPETITION PURSUANT TO<br>☐ 10 U.S.C. 2304(c)        ☐ 41 U.S.C. 253(c) |
|---|---|---|
| 26. ADMINISTERED BY        CODE<br><br>See Item 7 | | 27. PAYMENT WILL BE MADE BY:        CODE   964145<br>US ARMY CORPS OF ENGINEERS FINANCE CTR<br>5722 INTEGRITY DRIVE<br>CEFC-PAYMENTS@USACE.ARMY.MIL<br>MILLINGTON TN 38054-5005 |

| CONTRACTING OFFICER WILL COMPLETE ITEM 28 OR 29 AS APPLICABLE |
|---|

| ☒ 28. NEGOTIATED AGREEMENT   *(Contractor is required to sign this document and return __3__ copies to issuing office.)*   Contractor agrees to furnish and deliver all items or perform all work, requisitions identified on this form and any continuation sheets for the consideration stated in this contract. The rights and obligations of the parties to this contract shall be governed by (a) this contract award, (b) the solicitation, and (c) the clauses, representations, certifications, and specifications or incorporated by reference in or attached to this contract. REF: W912EP-10-C-0042 | ☐ 29. AWARD   *(Contractor is not required to sign this document.)*   Your offer on this solicitation, is hereby accepted as to the items listed. This award consummates the contract, which consists of (a) the Government solicitation and your offer, and (b) this contract award. No further contractual document is necessary. |
|---|---|
| 30A. NAME AND TITLE OF CONTRACTOR OR PERSON AUTHORIZED TO SIGN *(Type or print)* | 31A. NAME OF CONTRACTING OFFICER   *(Type or print)*<br>FRANCES C. JONES<br>CONTRACTING OFFICER |
| 30B. SIGNATURE | 30C. DATE | 31B. UNITED STATES OF AMERICA<br>BY *Frances C. Jones* | 31C. AWARD DATE<br>18 January 2013 |

Section 00010 - SOLICITATION, OFFER, AND AWARD

## CONTRACT NUMBER: W912EP-13-C-0008

## STANDARD FORM 1442 – CONTINUATION PAGE

## BLOCK 23: ACCOUNTING AND APPROPRIATION DATA

**AMERICAN RECOVERY & REINVESTMENT PROGRAM (FEDERAL STIMULUS FUNDS).  See FAR clause 52.204-11 for Contractor Reporting Requirements:**
96 NA X/X 3134.0000 CCS: 771 K3 X 08 2444 002860 96083 3230 3H38FK
AMOUNT: $21,939,676.18

**NON-FEDERAL FUNDS (SURETY):**
96 NA X/X 3122.0000 CCS: 999 K3 X 08 2444 0WDLOC 96083 3230 3D29L6
AMOUNT: $23,995,183.86

**CIVIL WORKS CONSTRUCTION FUNDS:**
96 NA X/X 3122.0000 CCS: 771 K3 X 08 2444 002860 96083 3230 3H2807
AMOUNT: $1,844,049.96



Section 00010A - LINE ITEMS & PRICING SCHEDULE

| ITEM NO 0001 | SUPPLIES/SERVICES | QUANTITY 1 | UNIT Lump Sum | UNIT PRICE $250,000.00 | AMOUNT $250,000.00 |
|---|---|---|---|---|---|
| | Wildlife Monitoring FFP FOB: Destination | | | | |
| | | | | NET AMT | $250,000.00 |

| ITEM NO 0002 | SUPPLIES/SERVICES | QUANTITY 1 | UNIT Lump Sum | UNIT PRICE $350,000.00 | AMOUNT $350,000.00 |
|---|---|---|---|---|---|
| | Demolition FFP FOB: Destination | | | | |
| | | | | NET AMT | $350,000.00 |

| ITEM NO 0003 | SUPPLIES/SERVICES | QUANTITY 540 | UNIT Linear Foot | UNIT PRICE $45.00 | AMOUNT $24,300.00 |
|---|---|---|---|---|---|
| | Well Decommissioning FFP FOB: Destination | | | | |
| | | | | NET AMT | $24,300.00 |



| ITEM NO<br>0004 | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT<br>$0.00 |
|---|---|---|---|---|---|
| | Clearing and Grubbing<br>FFP<br>FOB: Destination | | | | |
| | | | | NET AMT | $0.00 |

| ITEM NO<br>0004AA | SUPPLIES/SERVICES | QUANTITY<br>81.30 | UNIT<br>Acre | UNIT PRICE<br>$2,000.00 | AMOUNT<br>$162,600.00 |
|---|---|---|---|---|---|
| | Clearing - Felling and Piling<br>FFP<br>FOB: Destination | | | | |
| | | | | NET AMT | $162,600.00 |

| ITEM NO<br>0004AB | SUPPLIES/SERVICES | QUANTITY<br>511 | UNIT<br>Acre | UNIT PRICE<br>$1,500.00 | AMOUNT<br>$766,500.00 |
|---|---|---|---|---|---|
| | Clearing - Burning and/or Removing<br>FFP<br>FOB: Destination | | | | |
| | | | | NET AMT | $766,500.00 |



| ITEM NO 0004AC | SUPPLIES/SERVICES | QUANTITY 1 | UNIT Lump Sum | UNIT PRICE $150,000.00 | AMOUNT $150,000.00 |
|---|---|---|---|---|---|
| | Clearing - Clearing of Re-Growth FFP FOB: Destination | | | | |
| | | | | NET AMT | $150,000.00 |

| ITEM NO 0004AD | SUPPLIES/SERVICES | QUANTITY 144.40 | UNIT Acre | UNIT PRICE $2,000.00 | AMOUNT $288,800.00 |
|---|---|---|---|---|---|
| | Grubbing FFP FOB: Destination | | | | |
| | | | | NET AMT | $288,800.00 |

| ITEM NO 0005 | SUPPLIES/SERVICES | QUANTITY 1 | UNIT Lump Sum | UNIT PRICE $21,274,968.00 | AMOUNT $21,274,968.00 |
|---|---|---|---|---|---|
| | Dewatering FFP FOB: Destination | | | | |
| | | | | NET AMT | $21,274,968.00 |



| ITEM NO<br>0006 | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT<br>$0.00 |
|---|---|---|---|---|---|
| | Water Quality Measures<br>FFP<br>FOB: Destination | | | | |

|  |  |  | NET AMT | $0.00 |
|---|---|---|---|---|

| ITEM NO<br>0006AA | SUPPLIES/SERVICES | QUANTITY<br>1 | UNIT<br>Lump Sum | UNIT PRICE<br>$260,000.00 | AMOUNT<br>$260,000.00 |
|---|---|---|---|---|---|
| | Erosion and Sediment Control Measures<br>FFP<br>Install Erosion Control Measures<br>FOB: Destination | | | | |

|  |  |  | NET AMT | $260,000.00 |
|---|---|---|---|---|

| ITEM NO<br>0006AB | SUPPLIES/SERVICES | QUANTITY<br>1 | UNIT<br>Lump Sum | UNIT PRICE<br>$50,000.00 | AMOUNT<br>$50,000.00 |
|---|---|---|---|---|---|
| | Erosion and Sediment Control Measures -<br>FFP<br>Remove Erosion Control Measures<br>FOB: Destination | | | | |

|  |  |  | NET AMT | $50,000.00 |
|---|---|---|---|---|

| ITEM NO 0006AC | SUPPLIES/SERVICES | QUANTITY 1 | UNIT Lump Sum | UNIT PRICE $25,000.00 | AMOUNT $25,000.00 |
|---|---|---|---|---|---|
| | Turbidity Monitoring - Install Turbidity FFP Screen FOB: Destination | | | | |
| | | | | NET AMT | $25,000.00 |

| ITEM NO 0006AD | SUPPLIES/SERVICES | QUANTITY 1 | UNIT Lump Sum | UNIT PRICE $65,000.00 | AMOUNT $65,000.00 |
|---|---|---|---|---|---|
| | Turbidity Monitoring - Monitor Turbidity FFP & Water Quality FOB: Destination | | | | |
| | | | | NET AMT | $65,000.00 |

| ITEM NO 0007 | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT $0.00 |
|---|---|---|---|---|---|
| | Excavation of D-525N FFP FOB: Destination | | | | |
| | | | | NET AMT | $0.00 |

| ITEM NO 0007AA | SUPPLIES/SERVICES | QUANTITY 449,342 | UNIT Cubic Yard | UNIT PRICE $7.00 | AMOUNT $3,145,394.00 |
|---|---|---|---|---|---|
| | Excavation<br>FFP<br>FOB: Destination | | | | |
| | | | | NET AMT | $3,145,394.00 |

| ITEM NO 0007AB | SUPPLIES/SERVICES | QUANTITY 460,599 | UNIT Cubic Yard | UNIT PRICE $2.00 | AMOUNT $921,198.00 |
|---|---|---|---|---|---|
| | Disposal<br>FFP<br>FOB: Destination | | | | |
| | | | | NET AMT | $921,198.00 |

| ITEM NO 0008 | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT $0.00 |
|---|---|---|---|---|---|
| | Fill of D-525N<br>FFP<br>FOB: Destination | | | | |
| | | | | NET AMT | $0.00 |



| ITEM NO 0008AA | SUPPLIES/SERVICES | QUANTITY 174,500 | UNIT Cubic Yard | UNIT PRICE $7.00 | AMOUNT $1,221,500.00 |
|---|---|---|---|---|---|
| | Process Borrow Material FFP FOB: Destination | | | | |
| | | | | NET AMT | $1,221,500.00 |

| ITEM NO 0008AB | SUPPLIES/SERVICES | QUANTITY 275,801 | UNIT Cubic Yard | UNIT PRICE $6.00 | AMOUNT $1,654,806.00 |
|---|---|---|---|---|---|
| | Placement Embankment Fill FFP FOB: Destination | | | | |
| | | | | NET AMT | $1,654,806.00 |

| ITEM NO 0009 | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT $0.00 |
|---|---|---|---|---|---|
| | Soil Cement Embankment Armor FFP FOB: Destination | | | | |
| | | | | NET AMT | $0.00 |

| ITEM NO 0009AA | SUPPLIES/SERVICES | QUANTITY 9,500 | UNIT Cubic Yard | UNIT PRICE $8.00 | AMOUNT $76,000.00 |
|---|---|---|---|---|---|
| | Produce Soil Cement Material FFP FOB: Destination | | | | |
| | | | | NET AMT | $76,000.00 |

| ITEM NO 0009AB | SUPPLIES/SERVICES | QUANTITY 59,639.40 | UNIT Cubic Yard | UNIT PRICE $100.00 | AMOUNT $5,963,940.00 |
|---|---|---|---|---|---|
| | Place Soil Cement FFP FOB: Destination | | | | |
| | | | | NET AMT | $5,963,940.00 |

| ITEM NO 0009AC | SUPPLIES/SERVICES | QUANTITY 1 | UNIT Lump Sum | UNIT PRICE $250,000.00 | AMOUNT $250,000.00 |
|---|---|---|---|---|---|
| | Batch Plant Commissioning/Uniformity FFP FOB: Destination | | | | |
| | | | | NET AMT | $250,000.00 |

| ITEM NO<br>0009AD | SUPPLIES/SERVICES | QUANTITY<br>1 | UNIT<br>Lump Sum | UNIT PRICE<br>$100,000.00 | AMOUNT<br>$100,000.00 |
|---|---|---|---|---|---|
| | Rescreening of Soil Cement Stockpile<br>FFP<br>FOB: Destination | | | | |
| | | | | NET AMT | $100,000.00 |

| ITEM NO<br>0010 | SUPPLIES/SERVICES | QUANTITY<br>29.96 | UNIT<br>Acre | UNIT PRICE<br>$100,000.00 | AMOUNT<br>$2,996,000.00 |
|---|---|---|---|---|---|
| | Turf Reinforcement Mat<br>FFP<br>FOB: Destination | | | | |
| | | | | NET AMT | $2,996,000.00 |

| ITEM NO<br>0011 | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT<br>$0.00 |
|---|---|---|---|---|---|
| | Sodding<br>FFP<br>FOB: Destination | | | | |
| | | | | NET AMT | $0.00 |

W912EP-13-C-0008

Page 13 of 30

| ITEM NO 0011AA | SUPPLIES/SERVICES | QUANTITY 15.50 | UNIT Acre | UNIT PRICE $20,000.00 | AMOUNT $310,000.00 |
|---|---|---|---|---|---|
| | Top Soil<br>FFP<br>FOB: Destination | | | | |

NET AMT $310,000.00

| ITEM NO 0011AB | SUPPLIES/SERVICES | QUANTITY 15.50 | UNIT Acre | UNIT PRICE $10,000.00 | AMOUNT $155,000.00 |
|---|---|---|---|---|---|
| | Sod<br>FFP<br>FOB: Destination | | | | |

NET AMT $155,000.00

| ITEM NO 0012 | SUPPLIES/SERVICES | QUANTITY 1 | UNIT Lump Sum | UNIT PRICE $300,000.00 | AMOUNT $300,000.00 |
|---|---|---|---|---|---|
| | Wildlife Wetland Area<br>FFP<br>FOB: Destination | | | | |

NET AMT $300,000.00

| ITEM NO 0013 | SUPPLIES/SERVICES | QUANTITY 1 | UNIT Lump Sum | UNIT PRICE $585,000.00 | AMOUNT $585,000.00 |
|---|---|---|---|---|---|
| | Structure 530 FFP FOB: Destination | | | | |

|  |  |  | NET AMT | $585,000.00 |
|---|---|---|---|---|

| ITEM NO 0014 | SUPPLIES/SERVICES | QUANTITY 1 | UNIT Lump Sum | UNIT PRICE $460,000.00 | AMOUNT $460,000.00 |
|---|---|---|---|---|---|
| | Instrumentation FFP FOB: Destination | | | | |

|  |  |  | NET AMT | $460,000.00 |
|---|---|---|---|---|

| ITEM NO 0015 | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT $0.00 |
|---|---|---|---|---|---|
| | Articulated Concrete Mat FFP FOB: Destination | | | | |

|  |  |  | NET AMT | $0.00 |
|---|---|---|---|---|



| ITEM NO<br>0015AA | SUPPLIES/SERVICES | QUANTITY<br>9.75 | UNIT<br>Acre | UNIT PRICE<br>$90,000.00 | AMOUNT<br>$877,500.00 |
|---|---|---|---|---|---|
| | #89 Stone<br>FFP<br>FOB: Destination | | | | |
| | | | | NET AMT | $877,500.00 |

| ITEM NO<br>0015AB | SUPPLIES/SERVICES | QUANTITY<br>9.75 | UNIT<br>Acre | UNIT PRICE<br>$200,000.00 | AMOUNT<br>$1,950,000.00 |
|---|---|---|---|---|---|
| | #4 Stone<br>FFP<br>FOB: Destination | | | | |
| | | | | NET AMT | $1,950,000.00 |

| ITEM NO<br>0015AC | SUPPLIES/SERVICES | QUANTITY<br>9.75 | UNIT<br>Acre | UNIT PRICE<br>$125,000.00 | AMOUNT<br>$1,218,750.00 |
|---|---|---|---|---|---|
| | ACBM Installation<br>FFP<br>FOB: Destination | | | | |
| | | | | NET AMT | $1,218,750.00 |

W912EP-13-C-0008

Page 16 of 30

| ITEM NO 0016 | SUPPLIES/SERVICES | QUANTITY 24 | UNIT Months | UNIT PRICE $24,000.00 | AMOUNT $576,000.00 |
|---|---|---|---|---|---|
| | Contracting Officer's Field Office FFP FOB: Destination | | | | |

NET AMT                                   $576,000.00

| ITEM NO 0017 | SUPPLIES/SERVICES | QUANTITY 13.20 | UNIT Acre | UNIT PRICE $20,000.00 | AMOUNT $264,000.00 |
|---|---|---|---|---|---|
| | Aquatic Vegatation Zone FFP FOB: Destination | | | | |

NET AMT                                   $264,000.00

| ITEM NO 0018 | SUPPLIES/SERVICES | QUANTITY 1 | UNIT Lump Sum | UNIT PRICE $350,000.00 | AMOUNT $350,000.00 |
|---|---|---|---|---|---|
| | Temporary Access Bridge FFP FOB: Destination | | | | |

NET AMT                                   $350,000.00

| ITEM NO 0019 | SUPPLIES/SERVICES | QUANTITY 93,300 | UNIT Square Yard | UNIT PRICE $3.00 | AMOUNT $279,900.00 |
|---|---|---|---|---|---|

Foundation Cleanup
FFP
Hard Material Surfaces Only
FOB: Destination

|  |  |  |  | NET AMT | $279,900.00 |
|---|---|---|---|---|---|

| ITEM NO 0020 | SUPPLIES/SERVICES | QUANTITY 750 | UNIT Cubic Yard | UNIT PRICE $30.00 | AMOUNT $22,500.00 |
|---|---|---|---|---|---|

Foundation Treatment
FFP
FOB: Destination

|  |  |  |  | NET AMT | $22,500.00 |
|---|---|---|---|---|---|

| ITEM NO 0021 | SUPPLIES/SERVICES | QUANTITY 94,627 | UNIT Cubic Yard | UNIT PRICE $2.00 | AMOUNT $189,254.00 |
|---|---|---|---|---|---|

Excavation and Disposal of Soil/Peat
FFP
FOB: Destination

|  |  |  |  | NET AMT | $189,254.00 |
|---|---|---|---|---|---|

| ITEM NO 0022 | SUPPLIES/SERVICES | QUANTITY 15,000 | UNIT Linear Foot | UNIT PRICE $15.00 | AMOUNT $225,000.00 |
|---|---|---|---|---|---|

Soil Cement Embankment Armor Crack
FFP
Grouting
FOB: Destination

| | | | | NET AMT | $225,000.00 |
|---|---|---|---|---|---|

| ITEM NO 0023 | SUPPLIES/SERVICES | QUANTITY 1 | UNIT Lump Sum | UNIT PRICE $5,000.00 | AMOUNT $5,000.00 |
|---|---|---|---|---|---|

L-40 Levee Informational Signs
FFP
FOB: Destination

| | | | | NET AMT | $5,000.00 |
|---|---|---|---|---|---|

| ITEM NO 0024 | SUPPLIES/SERVICES | QUANTITY 1 | UNIT Lump Sum | UNIT PRICE $7,500.00 | AMOUNT $7,500.00 |
|---|---|---|---|---|---|

L-40 Buoys for Closure
FFP
FOB: Destination

| | | | | NET AMT | $7,500.00 |
|---|---|---|---|---|---|

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---------|-------------------|----------|------|------------|--------|
| 0025 | | 1 | Lump Sum | $7,500.00 | $7,500.00 |
| | Emergency Temporary Berms FFP FOB: Destination | | | | |

| | | | NET AMT | | $7,500.00 |
|--|--|--|---------|--|-----------|

Section 00100A - ADDITIONAL PROPOSAL PREPARATION/SUBMISSION INSTRUCTIONS

CLAUSES INCORPORATED BY REFERENCE

52.200-1          LIST OF CONSTRUCTION CONTRACT ATTACHMENTS APR 2003

Section 00101 - REPRESENTATIONS & CERTIFICATIONS

CLAUSES INCORPORATED BY REFERENCE

| 52.204-8 | Annual Representations and Certifications (JAN 2006) (CESAJ ADAPTATION AUG 2006) | AUG 2006 |
|---|---|---|



Section 00700 - CONTRACT CLAUSES

CLAUSES INCORPORATED BY REFERENCE

| | | |
|---|---|---|
| 52.202-1 | Definitions | JUL 2004 |
| 52.203-3 | Gratuities | APR 1984 |
| 52.203-5 | Covenant Against Contingent Fees | APR 1984 |
| 52.203-6 | Restrictions On Subcontractor Sales To The Government | SEP 2006 |
| 52.203-7 | Anti-Kickback Procedures | JUL 1995 |
| 52.203-8 | Cancellation, Rescission, and Recovery of Funds for Illegal or Improper Activity | JAN 1997 |
| 52.203-10 | Price Or Fee Adjustment For Illegal Or Improper Activity | JAN 1997 |
| 52.203-12 | Limitation On Payments To Influence Certain Federal Transactions | SEP 2007 |
| 52.203-13 | Contractor Code of Business Ethics and Conduct | DEC 2008 |
| 52.203-14 | DISPLAY OF HOTLINE POSTER(S) (DEC 2007) (CESAJ ADAPTATION) | MAR 2009 |
| 52.203-15 | Whstleblower Protections Under the American Recovery and Reinvestment Act of 2009 | MAR 2009 |
| 52.204-4 | Printed or Copied Double-Sided on Recycled Paper | AUG 2000 |
| 52.204-11 | American Recovery and Reinvestment Act--Reporting Requirements | MAR 2009 |
| 52.209-6 | Protecting the Government's Interest When Subcontracting With Contractors Debarred, Suspended, or Proposed for Debarment | SEP 2006 |
| 52.211-10 | Commencement, Prosecution, and Completion of Work | APR 1984 |
| 52.211-12 | Liquidated Damages--Construction | SEP 2000 |
| 52.211-18 | Variation in Estimated Quantity | APR 1984 |
| 52.215-2 Alt I | Audit and Records--Negotiation (Mar 2009) Alternate I | MAR 2009 |
| 52.215-11 | Price Reduction for Defective Cost or Pricing Data-- Modifications | OCT 1997 |
| 52.215-13 | Subcontractor Cost or Pricing Data--Modifications | OCT 1997 |
| 52.215-21 | Requirements for Cost or Pricing Data or Information Other Than Cost or Pricing Data--Modifications | OCT 1997 |
| 52.219-4 | Notice of Price Evaluation Preference for HUBZone Small Business Concerns | JUL 2005 |
| 52.219-8 | Utilization of Small Business Concerns | MAY 2004 |
| 52.219-9 Alt II (Dev) | Small Business Subcontracting Plan (Apr 2008) Alternate II (Devation) | OCT 2001 |
| 52.219-16 | Liquidated Damages-Subcontracting Plan | JAN 1999 |
| 52.219-28 | Post-Award Small Business Program Rerepresentation | APR 2009 |
| 52.222-3 | Convict Labor | JUN 2003 |
| 52.222-4 | Contract Work Hours and Safety Standards Act - Overtime Compensation | JUL 2005 |
| 52.222-6 | Davis Bacon Act | JUL 2005 |
| 52.222-7 | Withholding of Funds | FEB 1988 |
| 52.222-8 | Payrolls and Basic Records | FEB 1988 |
| 52.222-9 | Apprentices and Trainees | JUL 2005 |
| 52.222-10 | Compliance with Copeland Act Requirements | FEB 1988 |
| 52.222-11 | Subcontracts (Labor Standards) | JUL 2005 |
| 52.222-12 | Contract Termination-Debarment | FEB 1988 |
| 52.222-13 | Compliance with Davis-Bacon and Related Act Regulations. | FEB 1988 |
| 52.222-14 | Disputes Concerning Labor Standards | FEB 1988 |
| 52.222-15 | Certification of Eligibility | FEB 1988 |

| 52.222-21 | Prohibition Of Segregated Facilities | FEB 1999 |
| 52.222-26 | Equal Opportunity | MAR 2007 |
| 52.222-27 | Affirmative Action Compliance Requirements for Construction | FEB 1999 |
| 52.222-35 | Equal Opportunity For Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans | SEP 2006 |
| 52.222-36 | Affirmative Action For Workers With Disabilities | JUN 1998 |
| 52.222-37 | Employment Reports On Special Disabled Veterans, Veterans Of The Vietnam Era, and Other Eligible Veterans | SEP 2006 |
| 52.222-50 | Combating Trafficking in Persons | FEB 2009 |
| 52.222-54 | Employment Eligibility Verification | JAN 2009 |
| 52.223-6 | Drug-Free Workplace | MAY 2001 |
| 52.223-14 | Toxic Chemical Release Reporting | AUG 2003 |
| 52.225-13 | Restrictions on Certain Foreign Purchases | JUN 2008 |
| 52.225-23 | Required Use of American Iron, Steel, and Other Manufactured Goods--Buy American Act--Construction Materials Under Trade Agreements | AUG 2009 |
| 52.227-1 | Authorization and Consent | DEC 2007 |
| 52.227-2 | Notice And Assistance Regarding Patent And Copyright Infringement | DEC 2007 |
| 52.227-4 | Patent Indemnity-Construction Contracts | DEC 2007 |
| 52.228-1 | BID GUARANTEE (CESAJ ADAPTATION) | APR 2002 |
| 52.228-2 | Additional Bond Security | OCT 1997 |
| 52.228-11 | Pledges Of Assets | SEP 2009 |
| 52.228-12 | Prospective Subcontractor Requests for Bonds | OCT 1995 |
| 52.228-14 | Irrevocable Letter of Credit | DEC 1999 |
| 52.228-15 | Performance and Payment Bonds--Construction | NOV 2006 |
| 52.229-3 | Federal, State And Local Taxes | APR 2003 |
| 52.230-3 | Disclosure And Consistency Of Cost Accounting Practices | OCT 2008 |
| 52.230-6 | Administration of Cost Accounting Standards | MAR 2008 |
| 52.232-5 | Payments under Fixed-Price Construction Contracts | SEP 2002 |
| 52.232-17 | Interest | OCT 2008 |
| 52.232-23 Alt I | Assignment of Claims (Jan 1986) - Alternate I | APR 1984 |
| 52.232-27 | Prompt Payment for Construction Contracts | OCT 2008 |
| 52.232-33 | Payment by Electronic Funds Transfer--Central Contractor Registration | OCT 2003 |
| 52.233-1 | Disputes | JUL 2002 |
| 52.233-3 | Protest After Award | AUG 1996 |
| 52.233-4 | Applicable Law for Breach of Contract Claim | OCT 2004 |
| 52.236-1 | Performance of Work by the Contractor | APR 1984 |
| 52.236-2 | Differing Site Conditions | APR 1984 |
| 52.236-3 | Site Investigation and Conditions Affecting the Work | APR 1984 |
| 52.236-4 | PHYSICAL DATA (APR 1984) (CESAJ ADAPTATION) | MAY 2003 |
| 52.236-5 | Material and Workmanship | APR 1984 |
| 52.236-6 | Superintendence by the Contractor | APR 1984 |
| 52.236-7 | Permits and Responsibilities | NOV 1991 |
| 52.236-8 | Other Contracts | APR 1984 |
| 52.236-9 | Protection of Existing Vegetation, Structures, Equipment, Utilities, and Improvements | APR 1984 |
| 52.236-10 | Operations and Storage Areas | APR 1984 |
| 52.236-11 | Use and Possession Prior to Completion | APR 1984 |
| 52.236-12 | Cleaning Up | APR 1984 |
| 52.236-13 Alt I | Accident Prevention (Nov 1991) - Alternate I | NOV 1991 |
| 52.236-16 | Quantity Surveys | APR 1984 |
| 52.236-17 | Layout of Work | APR 1984 |

| 52.236-21 | Specifications and Drawings for Construction | FEB 1997 |
| 52.236-26 | Preconstruction Conference | FEB 1995 |
| 52.242-13 | Bankruptcy | JUL 1995 |
| 52.242-14 | Suspension of Work | APR 1984 |
| 52.243-4 | Changes | JUN 2007 |
| 52.244-2 | Subcontracts | JUN 2007 |
| 52.244-6 | Subcontracts for Commercial Items | DEC 2009 |
| 52.246-12 | Inspection of Construction | AUG 1996 |
| 52.246-21 | Warranty of Construction | MAR 1994 |
| 52.248-3 | Value Engineering-Construction | SEP 2006 |
| 52.249-2 Alt I | Termination for Convenience of the Government (Fixed-Price) (May 2004)  - Alternate I | SEP 1996 |
| 52.249-10 | Default (Fixed-Price Construction) | APR 1984 |
| 52.252-2 | CLAUSES INCORPORATED BY REFERENCE (FEB 1998) (CESAJ ADAPTATION) | JAN 2000 |
| 52.252-6 | Authorized Deviations In Clauses | APR 1984 |
| 52.253-1 | Computer Generated Forms | JAN 1991 |
| 252.201-7000 | Contracting Officer's Representative | DEC 1991 |
| 252.203-7000 | Requirements Relating to Compensation of Former DoD Officials | JAN 2009 |
| 252.203-7001 | Prohibition On Persons Convicted of Fraud or Other Defense-Contract-Related Felonies | DEC 2008 |
| 252.203-7002 | Requirement to Inform Employees of Whistleblower Rights | JAN 2009 |
| 252.204-7003 | Control Of Government Personnel Work Product | APR 1992 |
| 252.204-7004 Alt A | Central Contractor Registration (52.204-7) Alternate A | SEP 2007 |
| 252.205-7000 | Provision Of Information To Cooperative Agreement Holders | DEC 1991 |
| 252.209-7004 | Subcontracting With Firms That Are Owned or Controlled By The Government of a Terrorist Country | DEC 2006 |
| 252.215-7000 | Pricing Adjustments | DEC 1991 |
| 252.215-7002 | Cost Estimating System Requirements | DEC 2006 |
| 252.219-7003 (Dev) | Small Business Subcontracting Plan (Dod Contracts) (Deviation) | APR 2007 |
| 252.223-7001 | Hazard Warning Labels | DEC 1991 |
| 252.223-7004 | Drug Free Work Force | SEP 1988 |
| 252.225-7012 | Preference For Certain Domestic Commodities | DEC 2008 |
| 252.226-7001 | Utilization of Indian Organizations and Indian-Owned Economic Enterprises, and Native Hawaiian Small Business Concerns | SEP 2004 |
| 252.227-7033 | Rights in Shop Drawings | APR 1966 |
| 252.231-7000 | Supplemental Cost Principles | DEC 1991 |
| 252.232-7010 | Levies on Contract Payments | DEC 2006 |
| 252.236-7000 | Modification Proposals-Price Breakdown | DEC 1991 |
| 252.236-7001 | Contract Drawings, and Specifications | AUG 2000 |
| 252.236-7008 | Contract Prices-Bidding Schedules | DEC 1991 |
| 252.243-7001 | Pricing Of Contract Modifications | DEC 1991 |
| 252.243-7002 | Requests for Equitable Adjustment | MAR 1998 |
| 252.247-7023 | Transportation of Supplies by Sea | MAY 2002 |
| 252.247-7024 | Notification Of Transportation Of Supplies By Sea | MAR 2000 |



Section 00800 - SPECIAL REQUIREMENTS

INSPECTION AND ACCEPTANCE TERMS

Supplies/services will be inspected/accepted at:

| CLIN | INSPECT AT | INSPECT BY | ACCEPT AT | ACCEPT BY |
|---|---|---|---|---|
| 0001 | N/A | N/A | N/A | Government |
| 0002 | N/A | N/A | N/A | Government |
| 0003 | N/A | N/A | N/A | Government |
| 0004 | N/A | N/A | N/A | Government |
| 0004AA | N/A | N/A | N/A | Government |
| 0004AB | N/A | N/A | N/A | Government |
| 0004AC | N/A | N/A | N/A | Government |
| 0004AD | N/A | N/A | N/A | Government |
| 0005 | N/A | N/A | N/A | Government |
| 0006 | N/A | N/A | N/A | Government |
| 0006AA | N/A | N/A | N/A | Government |
| 0006AB | N/A | N/A | N/A | Government |
| 0006AC | N/A | N/A | N/A | Government |
| 0006AD | N/A | N/A | N/A | Government |
| 0007 | N/A | N/A | N/A | Government |
| 0007AA | N/A | N/A | N/A | Government |
| 0007AB | N/A | N/A | N/A | Government |
| 0008 | N/A | N/A | N/A | Government |
| 0008AA | N/A | N/A | N/A | Government |
| 0008AB | N/A | N/A | N/A | Government |
| 0009 | N/A | N/A | N/A | Government |
| 0009AA | N/A | N/A | N/A | Government |
| 0009AB | N/A | N/A | N/A | Government |
| 0009AC | N/A | N/A | N/A | Government |
| 0009AD | N/A | N/A | N/A | Government |
| 0010 | N/A | N/A | N/A | Government |
| 0011 | N/A | N/A | N/A | Government |
| 0011AA | N/A | N/A | N/A | Government |
| 0011AB | N/A | N/A | N/A | Government |
| 0012 | N/A | N/A | N/A | Government |
| 0013 | N/A | N/A | N/A | Government |
| 0014 | N/A | N/A | N/A | Government |
| 0015 | N/A | N/A | N/A | Government |
| 0015AA | N/A | N/A | N/A | Government |
| 0015AB | N/A | N/A | N/A | Government |
| 0015AC | N/A | N/A | N/A | Government |
| 0016 | N/A | N/A | N/A | Government |
| 0017 | N/A | N/A | N/A | Government |
| 0018 | N/A | N/A | N/A | Government |
| 0019 | N/A | N/A | N/A | Government |
| 0020 | N/A | N/A | N/A | Government |
| 0021 | N/A | N/A | N/A | Government |
| 0022 | N/A | N/A | N/A | Government |
| 0023 | N/A | N/A | N/A | Government |



| | | | | |
|---|---|---|---|---|
| 0024 | N/A | N/A | N/A | Government |
| 0025 | N/A | N/A | N/A | Government |

## DELIVERY INFORMATION

| CLIN | DELIVERY DATE | QUANTITY | SHIP TO ADDRESS | UIC |
|---|---|---|---|---|
| 0001 | 01-NOV-2014 | 1 | N/A FOB: Destination | |
| 0002 | 01-NOV-2014 | 1 | N/A FOB: Destination | |
| 0003 | 01-NOV-2014 | 540 | N/A FOB: Destination | |
| 0004 | N/A | N/A | N/A | N/A |
| 0004AA | 01-NOV-2014 | 81.30 | N/A FOB: Destination | |
| 0004AB | 01-NOV-2014 | 511 | N/A FOB: Destination | |
| 0004AC | 01-NOV-2014 | 1 | N/A FOB: Destination | |
| 0004AD | 01-NOV-2014 | 144.40 | N/A FOB: Destination | |
| 0005 | 01-NOV-2014 | 1 | N/A FOB: Destination | |
| 0006 | N/A | N/A | N/A | N/A |
| 0006AA | 01-NOV-2014 | 1 | N/A FOB: Destination | |
| 0006AB | 01-NOV-2014 | 1 | N/A FOB: Destination | |
| 0006AC | 01-NOV-2014 | 1 | N/A FOB: Destination | |
| 0006AD | 01-NOV-2014 | 1 | N/A FOB: Destination | |
| 0007 | 01-NOV-2014 | | N/A FOB: Destination | |

| | | | |
|---|---|---|---|
| 0007AA | 01-NOV-2014 | 449,342 | N/A<br>FOB: Destination |
| 0007AB | 01-NOV-2014 | 460,599 | N/A<br>FOB: Destination |
| 0008 | 01-NOV-2014 | | N/A<br>FOB: Destination |
| 0008AA | 01-NOV-2014 | 174,500 | N/A<br>FOB: Destination |
| 0008AB | 01-NOV-2014 | 275,801 | N/A<br>FOB: Destination |
| 0009 | 01-NOV-2014 | | N/A<br>FOB: Destination |
| 0009AA | 01-NOV-2014 | 9,500 | N/A<br>FOB: Destination |
| 0009AB | 01-NOV-2014 | 59,639.40 | N/A<br>FOB: Destination |
| 0009AC | 01-NOV-2014 | 1 | N/A<br>FOB: Destination |
| 0009AD | 01-NOV-2014 | 1 | N/A<br>FOB: Destination |
| 0010 | 01-NOV-2014 | 29.96 | N/A<br>FOB: Destination |
| 0011 | 01-NOV-2014 | | N/A<br>FOB: Destination |
| 0011AA | 01-NOV-2014 | 15.50 | N/A<br>FOB: Destination |
| 0011AB | 01-NOV-2014 | 15.50 | N/A<br>FOB: Destination |
| 0012 | 01-NOV-2014 | 1 | N/A<br>FOB: Destination |
| 0013 | 01-NOV-2014 | 1 | N/A<br>FOB: Destination |
| 0014 | 01-NOV-2014 | 1 | N/A<br>FOB: Destination |
| 0015 | 01-NOV-2014 | | N/A<br>FOB: Destination |

| | | | |
|---|---|---|---|
| 0015AA | 01-NOV-2014 | 9.75 | N/A<br>FOB: Destination |
| 0015AB | 01-NOV-2014 | 9.75 | N/A<br>FOB: Destination |
| 0015AC | 01-NOV-2014 | 9.75 | N/A<br>FOB: Destination |
| 0016 | 01-NOV-2014 | 24 | N/A<br>FOB: Destination |
| 0017 | 01-NOV-2014 | 13.20 | N/A<br>FOB: Destination |
| 0018 | 01-NOV-2014 | 1 | N/A<br>FOB: Destination |
| 0019 | 01-NOV-2014 | 93,300 | N/A<br>FOB: Destination |
| 0020 | 01-NOV-2014 | 750 | N/A<br>FOB: Destination |
| 0021 | 01-NOV-2014 | 94,627 | N/A<br>FOB: Destination |
| 0022 | 01-NOV-2014 | 15,000 | N/A<br>FOB: Destination |
| 0023 | 01-NOV-2014 | 1 | N/A<br>FOB: Destination |
| 0024 | 01-NOV-2014 | 1 | N/A<br>FOB: Destination |
| 0025 | 01-NOV-2014 | 1 | N/A<br>FOB: Destination |

**CLAUSES INCORPORATED BY REFERENCE**

| | | |
|---|---|---|
| 52.223-3 | HAZARDOUS MATERIAL IDENTIFICATION AND MATERIAL SAFETY DATA (JAN 1997) (CESAJ ADAPTATION) | DEC 1999 |
| 998.231-1 | EFARS 52.231-5000  EQUIPMENT OWNERSHIP AND OPERATING EXPENSE SCHEDULE (MAR 1995) | MAY 1999 |
| 998.249-1 | EFARS 52.249-5000  BASIS FOR TERMINATION SETTLEMENT PROPOSALS | MAY 1999 |
| 999.201-4002 | UNAUTHORIZED INSTRUCTIONS FROM GOVERNMENT OR OTHER PERSONNEL | DEC 1999 |
| 999.203-4000 | DFARS 203-70 - CONTRACTOR STANDARDS OF CONDUCT | DEC 1999 |

| | | |
|---|---|---|
| 999.215-4001 | LIMITATIONS ON SUBSTITUTIONS FOR CERTAIN POSITIONS AND/OR SUBCONTRACTORS | MAR 2001 |
| 999.219-4001 | RETAINAGE FOR FAILURE TO COMPLY WITH SUBCONTRACTING PLAN REPORTING REQUIREMENTS | DEC 1999 |
| 999.223-4026 | U.S. ARMY CORPS OF ENGINEERS SAFETY AND HEALTH REQUIREMENTS MANUAL, EM 385-1-1 | JAN 2001 |
| 999.236-4003 | CONSTRUCTION CONTRACTOR PERFORMANCE EVALUATIONS | FEB 2009 |
| 999.239-1 | AUTOMATED INFORMATION SYSTEM SECURITY | MAR 2003 |

Section 00800A - WAGE DETERMINATIONS & OTHER ATTACHMENTS

CLAUSES INCORPORATED BY REFERENCE

52.200-1          LIST OF CONSTRUCTION CONTRACT ATTACHMENTS APR 2003

AMENDMENT NO. 1
TO
TENDER AND RELEASE AGREEMENT
REGARDING Contract No. W912EP-10-C-0042, 114572 Site 1 Impoundment Phase 1,
Palm Beach County, Florida

THIS Amendment No. 1 is made and entered into this _4th_ day of January, 2013, by and between the United States of America, Department of the Army, Jacksonville District, Corps of Engineers ("USACE") represented by the Contracting Officer, and Hanover Insurance Company ("Surety"), represented by its Vice President.

1.    On December 31, 2012, the USACE and the Surety entered into a Tender and Release Agreement ("Agreement") providing for the tender of a new contractor to complete all the required work that remains to be performed under the now terminated Contract No. W912EP-10-C-0042 ("Prime Contract"), for all labor, services and materials to construct Project No. 114572 Site 1 Impoundment Phase 1, Palm Beach County, Florida ("Project") in accordance with the terms and provisions of the Prime Contract, including all documents forming a part of the Prime Contract.

2.    Surety executed the Agreement on December 31, 2012, but was not able to deliver it to the USACE until January 2, 2013.

3.    Article 4 of the Agreement states in part, "USACE will finalize and enter into a Completion Agreement with the Completion Contractor for the completion of the Project in compliance with the "Contract Documents", as defined herein, within fourteen (14) working days from the date of this Agreement for a Completion Price of $47,778,910.00 subject to adjustments as provided herein."

4.    Article 6 of the Agreement states in part, "In exchange for this Agreement and USACE's full and complete release of Surety, Surety shall pay $23,995,183.86 (which amount

represents the Completion Price less the Balance of the Contract Price) to USACE within ten (10) days of the date of this agreement, by electronic funds transfer ("EFT") in accordance with instructions to be provided by the USACE to Surety in writing; however, in the event Surety is unable to deliver the funds within 10 (ten) days due to the  procedure required to send the funds via EFT they will be allowed up to an additional 5 (days)."

     5.    Article 16(k) of the Agreement states, "This Agreement shall not in any way be amended or modified without the written consent of both Parties."

     6.    The Parties now agree to start the time clock in Articles 4 and 6 not from the date of the last signature, December 31, 2012, but rather from the date of receipt of the fully executed Agreement, January 2, 2013.

**THE SIGNATORIES TO THIS AGREEMENT ACKNOWLEDGE THAT THEY HAVE READ THE FOREGOING AGREEMENT, FULLY UNDERSTAND ITS TERMS AND CONDITIONS, AND AGREE TO BE BOUND BY ALL OF ITS TERMS AND CONDITIONS.**

**UNITED STATES OF AMERICA, ACTING BY AND THROUGH THE DEPARTMENT OF THE ARMY JACKSONVILLE DISTRICT, CORPS OF ENGINEERS**

**HANOVER INSURANCE COMPANY**

By: _Frances C. Jones_
Name: Frances C. Jones
Title: Contracting Officer

By: _____
Name: _Toby Pilcher_
Title: _Sr Claims Attorney - Surety_

### TENDER AND RELEASE AGREEMENT
**REGARDING Contract No. W912EP-10-C-0042, 114572 Site 1 Impoundment Phase 1, Palm Beach County, Florida**

THIS TENDER AND RELEASE AGREEMENT Regarding Contract No. W912EP-10-C-0042, 114572 Site 1 Impoundment Phase 1, Palm Beach County, Florida ("Agreement") is made and entered into this 31st day of December, 2012, by and between the United States of America, Department of the Army, Jacksonville District, Corps of Engineers ("USACE"), and Hanover Insurance Company ("Surety").

### RECITALS

WHEREAS, Lodge Construction, Inc. ("Former Contractor") and USACE entered into a subsequently modified Contract No. W912EP-10-C-0042 on July 21, 2010 (the "Prime Contract") for the Former Contractor to furnish all labor, services and materials to construct Project No. 114572 Site 1 Impoundment Phase 1, Palm Beach County, Florida (the "Project") in accordance with the terms and provisions of the Prime Contract, including all documents forming a part of the Prime Contract.

WHEREAS, Surety, as surety for Former Contractor, executed Performance and Payment Bonds in favor of USACE, Bond No. 1921209 (collectively, the "Bonds"), each in the penal sum of $46,283,204.14, including all consents of surety, in accordance with Prime Contract clause 52.228-15.

WHEREAS, USACE declared Former Contractor in default in performance of the Prime Contract and on July 23, 2012 USACE terminated the Prime Contract and Former Contractor's rights thereunder.

WHEREAS, by letter dated July 23, 2012, USACE has made demand on Surety, under the provisions and conditions of the Performance Bond, to either takeover and complete all

required work that remains to be performed under the Prime Contract or to tender a new contractor to do so.

WHEREAS, USACE has paid Former Contractor $22,421,163.95 under the Contract, leaving a contract balance of $23,862,040.19 (the "Balance of the Contract Price") less adjustments noted below in paragraph 5.

WHEREAS, Former Contractor is either unwilling or unable to complete its obligations under the Contract and USACE has demanded that Surety satisfy its obligations under the Bond so the Project is completed.

WHEREAS, Surety has tendered to USACE a completion contractor, Munilla Construction Management, LLC d/b/a MCM (the "Completion Contractor"), and arranged for USACE to enter into a new contract with the Completion Contractor ("Completion Agreement"), under which the Completion Contractor will: (a) complete the remaining work to be performed under the Prime Contract for the lump sum price of $47,778,910.00 (the "Completion Price)," (b) warrant all of its work, and (c) furnish to USACE payment and performance bonds on Standard Forms 25A (10/1998) and 25 (5/1996) to be issued by Travelers Casualty and Surety Company of America, which bonds will guarantee the Completion Contractor's performance and the payment of all labor, services, materials, equipment or supplies furnished by or through the Completion Contractor.

WHEREAS, Surety has agreed to pay USACE the difference between the Completion Price and the Balance of the Contract Price as a cash settlement of USACE's claims asserted against Surety's Performance Bond associated with the Project, except for its obligation to cure latent defects in the work performed by Former Contractor under the Prime Contract that are unrelated to the breach of the cofferdam installed by the Former Contractor.

2

WHEREAS, Surety and USACE have been unable to reach an agreement as to USACE's claims for: liquidated damages against the Former Contractor pursuant to the Prime Contract; repayment of the advance paid by USACE to Former Contractor's for his performance/payment bond premium; delays incurred to the project due to the default and reprocurement; and any and all other damages and reprocurement costs incurred by USACE. These claims are in dispute and no terms of this Agreement are to be interpreted as Surety's acceptance of liability for such.

WHEREAS, the funds originally obligated under this contract remain obligated and available for performance of the awarded scope of work, and upon receipt of funds provided under this tender agreement the Corps will have the funds necessary to award a contract to complete the work.

WHEREAS, the Secretary of the Army has executed an agreement with the South Florida Water Management District reflecting its commitment to complete the project that includes the work to be conducted under the contract.

WHEREAS, the continued obligation of the funds, availability of such funds for the performance of the awarded scope of work, and Assistant Secretary of the Army's support for the completion of such work as expressed by the Project Partnership Agreement dated June 10, 2010, are material facts upon which Surety relies in entering this Agreement.

WHEREAS, the representation from Hanover that the Completion Contractor has accepted full responsibility for all aspects of the cofferdam construction, including any portions constructed by Former Contractor, and any and all latent defects caused by such construction are material facts upon which USACE relies in entering this Agreement.

3

WHEREAS, the tender proposal and cash settlement offer set forth herein is acceptable to USACE, and the Parties desire to document the terms of their agreement as set forth herein.

NOW THEREFORE, in consideration of the agreements and undertakings hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy therefor being hereby acknowledged, USACE and Surety agree as follows:

## TERMS OF AGREEMENT:

1.    Recitals.  The recitals set forth above are true and correct and are incorporated herein by reference.

2.    Work performed by Former Contractor.  USACE agrees that, as of the date of this Agreement, all work performed on, and materials incorporated into, the Project by Former Contractor are to the best of USACE's knowledge in accordance with the Contract terms and are acceptable to USACE, except for the deficiencies in Former Contractor's construction identified in Attachment A, as identified in the Completion Contract, and except for such latent conditions resulting from omissions, oversights and errors by Former Contractor, if any, that ordinarily would not be discoverable by inspection at this stage of the construction, and have not been discovered by or made known to USACE. As of the date of this Agreement, USACE is not aware of any latent conditions in the work performed by Former Contractor on the Project. Notwithstanding any provision in this Agreement or otherwise, Hanover shall have no continuing or other obligation or liability for any defect, latent or otherwise, in any way related the cofferdam construction, it being understood and agreed that Completion Contractor has accepted full responsibility for all aspects of the cofferdam construction, including any portions constructed by Former Contractor, and any and all latent defects caused by such construction.

4

3.    Completion Contract.    Surety hereby tenders the services of Completion Contractor to USACE, and USACE agrees to contract directly with Completion Contractor for completion of the Project.

4.    Entry Into Completion Contract. USACE will finalize and enter into a Completion Agreement with the Completion Contractor for the completion of the Project in compliance with the "Contract Documents", as defined herein, within fourteen (14) working days from the date of this Agreement for a Completion Price of $47,778,910.00 subject to adjustments as provided herein. As used in this Agreement, the term "Contract Documents" means: (i) the Completion Contract, (ii) the bid package and all of the bid documents described in the bid package, as prepared by Lovett Silverman Construction Consultants, Inc. ("Lovett") on behalf of Surety; (iii) the Completion Contractor's Bid Proposal dated October 19, 2012; (iv) Former Contractor's Prime Contract with USACE, including all drawings, specifications, forms, addenda and documents forming a part of the Contract, and any modifications to the Contract, and (v) this Agreement.

5.    Accounting of Contract Balance. The Parties agree that the contract accounting resulting in the Balance of the Contract Price is as follows:

| | |
|---|---|
| Original Contract Amount: | $44,125,000.00 |
| Contract as Adjusted by Modifications: | $46,283,204.14 |
| Less Previous Payments to Former Contractor: | ($22,421,163.95) |
| Less one half of the payment to Security Contractor (the other half being borne by USACE): | ($    78,314.05) |

5

Balance of the Contract Price:          $23,783,726.14

USACE shall devote the Balance of the Contract Price to the completion of the
Project.

6.    Payment by Surety.  In exchange for this Agreement and USACE's full and complete
release of Surety, Surety shall pay $ $23,995,183.86  (which amount represents the Completion Price
less the Balance of the Contract Price) to USACE within ten (10) days of the date of this agreement,
by electronic funds transfer ("EFT") in accordance with instructions to be provided by the USACE to
Surety in writing; however, in the event Surety is unable to deliver the funds within 10 (ten) days due
to the  procedure required to send the funds via EFT they will be allowed up to an additional 5 (days) .
USACE hereby reduces the present penal amount of Surety's Performance Bond from its stated penal
limit of $46,283,204.14 to the reduced amount of $23,783,726.14, which represents the amount of the
bond as adjusted by approved change orders less the Balance of the Contract Price and less the
Settlement Payment. The reduction of the penal amount of Surety's Performance Bond in no way acts
as a waiver of any disputed claim as listed in paragraph 10.  USACE's Release of Surety, A below;
rather, such reduction limits the extent of Surety's monetary exposure as to any of USACE's claims
not released herein

7.     Bonds from Completion Contractor.  The Completion Contractor shall provide
payment and performance bonds as required by the Contract Documents, naming both USACE
and Surety as obligees, in the amount of the Completion Price, issued by Travelers Casualty and
Surety Company of America.  USACE will not be responsible for any additional payment for
these bonds. During the progress of the completion work, USACE shall hereafter conduct
business directly with the Completion Contractor as if it is the prime contractor under the Prime

Contract and future payments under this contract shall be made directly to:

> Munilla Construction Management, LLC d/b/a MCM
> 6201 SW 70 Street, 2nd Floor
> Miami, FL 33143

8.   Project administration.   After USACE's execution of the Completion Contract, administration and inspection of the Project will remain with USACE and its agents/engineers and inspectors in accordance with the terms of the Contract.

9.   Disposition of sheetpiles installed by Former Contractor.   USACE has no claim or interest in any of the materials that comprise the sheetpile system installed by the Former Contractor.

10.   USACE's Release of Surety.   In exchange for this Agreement and the payment referenced in paragraph 6 above, USACE hereby RELEASES, ACQUITS and FOREVER DISCHARGES Surety and its officers, directors, shareholders, employees, parent companies, sibling companies, affiliated companies, reinsurers, successors and assigns of and from any and all claims, rights, demands and/or causes of action of whatsoever kind or nature that USACE has or may ever claim to have, now or in the future, against Surety in any way relating to the Project, the design or construction of the Project, and/or by reason of its Performance Bond furnished to USACE; provided however, that it is expressly understood and agreed by and between the Parties that the foregoing Release is qualified and limited by the following exceptions:

> A.   Surety, without acknowledging the validity of any such claims, expressly agrees that this Agreement does not release it from liability for USACE disputed claims for: (1) liquidated damages against the Former Contractor for delayed performance pursuant to the Prime Contract except that the Parties expressly agree that liquidated damages shall not be calculated to have accrued from July 23, 2012 to the date the Completion

7

Contract is executed between the Completion Contractor and USACE; (2) repayment of the advance paid by USACE to Former Contractor for its performance/payment bond premium; (3) reprocurement costs incurred by USACE due to Former Contractor's default in performance of the Prime Contract; (4) whether the USACE is entitled to $209,089.77 according to FAR 49.406 as hold back funds from the Former Contractor, and whether such funds can be applied, whether to cover Prime Contract completion costs or to liquidate the Former Contractor's and Surety's liability to USACE for resultant damages from the default in performance of the Prime Contract; and (5) the liability of Surety to USACE for the full amount of the funds expended by USACE for site security from July 23, 2012 through and until the date the Completion Contractor becomes contractually obligated for the security of the site, with USACE giving credit to Surety for the payment of $78,314.05 reflected in paragraph 5 above.

B.  USACE expressly agrees: (1) to accept the performance bond being furnished by Completion Contractor as the primary performance bond pertaining to the Completion Contractor's scope of work for the Project;

C.  USACE further expressly agrees that: (1) it will at no time call upon or attempt to call upon Surety with regard to Surety's performance bond, as reduced in its penal amount, in relation to the Project, unless: (a) Completion Contractor defaults upon its Completion Contract and fails to cure any such default, causing the Completion Contract to be terminated; and (b) as a result of such default, USACE calls upon the Completion Contractor's performance bond surety and the entire penal limits of

8

Completion Contractor's performance bond are exhausted and paid to the USACE; (2) Surety shall only have continuing potential exposure upon its performance bond, as reduced in its penal amount, for any excess liability, if any, resulting from the aforementioned events; and (3) in the event of any such default of Completion Contractor, USACE shall provide prompt written notice of such event to Surety.

D. Surety shall remain liable on its Performance Bond, as reduced in its penal amount, to the extent: (a) latent defects in Former Contractor's work are discovered and require remediation, replacement, or repair; (b) work that would qualify as warranty work under Former Contractor's contract is required; and (c) its obligations pursuant to this Agreement.

E. Surety shall remain liable on its Payment Bond, as specified in paragraph 6 above.

11. <u>Continued effect of Surety's payment bond</u>. Surety acknowledges and agrees that the payment bond it furnished for the Project remains in full force and effect in accordance with its original terms, except that it is expressly agreed by and between Surety and USACE that the scope and coverage of the Payment and Performance Bonds shall be limited to and shall only apply to statutory claims for payment of Former Contractor's subcontractors and suppliers for work performed and/or materials delivered before the date of the Completion Contractor's commencement of its work, and that such Bonds do not apply to or cover the Completion Contractor or any of its subcontractors and suppliers for any work performed and/or materials delivered after the date of this Agreement.

12. <u>Notices</u>. Any notices required to be given by the terms of this Agreement, the Bonds or the Prime Contract shall be made *via* certified mail, return receipt requested, postage prepaid to:

9

<u>As to USACE:</u>

Frances C. Jones
U.S. Army Corps of Engineers
701 San Marco Boulevard
Jacksonville, FL 32207

<u>With a copy to:</u>

Charles T. Pino, Esq.
U.S. Army Corps of Engineers
701 San Marco Boulevard
Jacksonville, FL 32207

<u>As to Surety:</u>

Toby Pilcher, Esq.
440 Lincoln Street
Worcester, MA 01615-0142

<u>With a copy to:</u>

Brett D. Divers, Esq.
Mills Paskert Divers
100 North Tampa Street, Suite 3700
Tampa, FL 33602

13.    <u>No third party beneficiaries.</u>   The Parties do not intend by any provision of this Agreement to create any third-party beneficiaries nor to confer any benefit upon or enforceable rights or otherwise upon any person, firm or entity other than the Parties hereto.

14.    <u>Reservation of rights.</u>   By this Agreement, Surety does not waive Former Contractor's rights, if any, to contest the validity of the default or as to any other matter, rights, claims or defenses (whether related to the Project or not) that Former Contractor may have against any person, firm or entity including, without limitation, the USACE.   USACE likewise reserves all rights, claims and defenses it may have against Former Contractor and, except as otherwise stated herein, USACE reserves all rights, claims and defenses it may have against Surety.   Moreover, nothing in this Agreement shall be deemed to waive, alter, limit, modify or abridge any of Surety's rights, claims or defenses (whether related to the Project or not) against any person, firm or entity (including, without limitation, USACE) under the Bonds, the law, agreements of indemnity, or otherwise.   Surety's reservation of rights expressly includes the right of Surety to pursue as its own any matter, right, claim or defense of Former Contractor.   Further, Surety expressly reserves all rights and defenses regarding the appropriateness of USACE's deduction,

10

assessment or other effort to recover any costs, expenses or damages (actual, liquidated or otherwise) from Surety, including the security costs deducted in paragraph 5 above. All of the rights, claims and defenses referenced in this paragraph are expressly reserved.

15. <u>Continued effect of Agreement of Indemnity.</u>   The April 14, 2009 Agreement of Indemnity between Surety and Former Contractor (and certain individuals identified therein), and any amendments or modifications thereto, remain in full force and effect, and nothing in this Agreement shall be deemed to waive, alter, limit, modify, or release any of Surety's rights, claims, defenses or anything whatsoever under such Agreement of Indemnity.

16. <u>General Provisions.</u>

(a)  This Agreement contains contractual obligations and not mere recitals.

(b)  This Agreement may be executed in counterparts, each of which shall be fully effective as an original and all of which together shall constitute one and the same instrument.

(c)  Facsimile and electronic signatures may be treated as originals for all purposes.

(d)  The remedies of the Parties hereto provided herein are cumulative and concurrent, and may be pursued singly, successively or together, at the sole discretion of the aggrieved party, and may be exercised as often as occasion therefor shall arise.

(e)  This Agreement shall be construed and enforced in accordance with the laws of the State of Florida.  The prevailing party in any arbitration, mediation, or litigation arising out of this Agreement shall be entitled to

11

recover from the non-prevailing party its attorneys' fees incurred therein and on appeal therefrom.

(f)      This Agreement constitutes the complete and final expression of the agreement of the Parties relating to the subject matter contained herein and supersedes all previous contracts, agreements, and understandings of the Parties, whether oral or written.

(g)      If any provision or term of this Agreement is deemed to be illegal or unenforceable in any respect, such provision or term shall not affect any other provision or term hereof, and this Agreement shall be construed as if the provision or term had never been contained herein.

(h)      The Parties agree to cooperate fully to execute any and all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force and effect to the basic terms, conditions, and intent of this Agreement.

(i)      The Parties agree to bear their own attorneys' fees and costs incurred in all matters that led to the entry of this Agreement.

(j)      This Tender and Release Agreement is binding upon the Parties and their respective successors, assigns and privies.

(k)      This Agreement shall not in any way be amended or modified without the written consent of both Parties.

(l)      The Parties acknowledge that they are and have been represented by counsel in connection with the negotiation of this Agreement, that the

12

provisions of this Agreement and the legal effect thereof have been fully

explained to them, and that they have entered into this Agreement freely

and voluntarily and without coercion or undue influence.

THE SIGNATORIES TO THIS AGREEMENT ACKNOWLEDGE THAT THEY HAVE READ THE FOREGOING AGREEMENT, FULLY UNDERSTAND ITS TERMS AND CONDITIONS, AND AGREE TO BE BOUND BY ALL OF ITS TERMS AND CONDITIONS.

UNITED STATES OF AMERICA, ACTING BY AND THROUGH THE DEPARTMENT OF THE ARMY JACKSONVILLE DISTRICT, CORPS OF ENGINEERS

HANOVER INSURANCE COMPANY

By: _Frances C. Jones_
Name: Frances C. Jones
Title: Contracting Officer

By: _____
Name: Joseph Brunstrom
Title: Vice President Hanover Surety

13

Attachment A to Tender and Release Agreement regarding Contract No. W912EP-10-C-0042

**Deficiency Items Issued by QA/QC**

17 Sep 2012

US Army Corps
of Engineers

114572 Site 1 Impoundment Phase 1
W912EP-10-0042  NA

Palm Beach County, FL

| Item Number | Description | Location | Status | Date Issued | Age (Days) |
|---|---|---|---|---|---|
| QA-00001 | The following Preconstruction Submittals and Shop Drawings are past due and were required to be submitted within 30 days of NTP: Mobilization/Demobilization Plan, Security Plan, Contractor's Temporary Facilities, Contracting Officer's Trailer, and Vibration Control Plan. (GAG) | | QA Concurs Corrected | 22 Nov 2010 | |
| QA-00002 | The following observations were made today and must be addressed: Connex # TPHU286739 used to store flammable material. - Connex not properly labeled as flammable storage locker. - Oxygen cylinders not properly secured. - Flammables stored with combustibles material - No MSDS on site for flammables( spray paint, paint, Oil) - 55 gallon drums need to be properly stored - Flammables stored in container marked " NOT FOR FLAMMABLE STORAGE" (GAG) | Barrow pit | QA Concurs Corrected | 01 Feb 2011 | |
| QA-00003 | Slopes are vertical and undermining contractor should be laying slopes back on 2 to 1 as described on drawing G-104 (GAG) | Barrow pit | QA Concurs Corrected | 01 Feb 2011 | |
| QA-00004 | Reference Spec. 40 95 00, under submittals on Pages 7 to 9. The following submittals are overdue: - "Training Manual" due within 90 days of Notice To Proceed - Shop Drawings and data prepared by the Single I&C sub-contractor due within 80 days of Notice To Proceed. (GAG) | *Submittals | QA Concurs Corrected | 01 Feb 2011 | |
| QA-00005 | Under Spec. 31 35 30 "Soil Cement Slope Protection", we have not received the following Preconstruction Submittals for "Equipmen & Plans": - Hauling Equipment - Placement Equipment - Compaction Equipment - Placing & Spreading Plan (GAG) | *Submittals | QA Concurs Corrected | 01 Feb 2011 | |
| QA-00006 | Per Contract Specification Section 01 50 02 p. Security Plan: Provide site security person at all times when there are no on-site activities. Maintain 24-hour security during weekends and holidays. Per Transmittal 01 50 02-2: Lodge Construction will be installing day and night time cameras that have remote access at the field offices, the fuel and equipment storage staging areas and the batch plant. Security shall be provided for this project (SMM) | *Submittals | QA Concurs Corrected | 12 Feb 2011 | |
| QA-00007 | no tributaty barrier around floating plant as described in EPP section 7.4.4 (CSM) | *EPP | QA Concurs Corrected | 16 Feb 2011 | |
| QA-00008 | no tributaty barrier around discharge point in hilleboro canal as described in EPP Figure 7.1 (CSM) | *EPP | QA Concurs Corrected | 16 Feb 2011 | |
| QA-00009 | A Site Security Person has not been provided by the Contractor for this worksite. A Site Security Person is required during hours of no work, which may include weekends and holidays. See Para. 3.7 "Security Plan", Spec. 01 50 02. (GAG) | Project Site | QA Concurs Corrected | 04 Mar 2011 | |
| QA-00010 | The Corps' QA survey performed on February 24, 2010 shows sections of Borrow Pit 1 where the side slopes are steeper than required 2 to 1 slopes  (Reference Detail "B", Plan Sheet G-104 for required slopes). (GAG) | Borrow Pit | QA Concurs Corrected | 04 Mar 2011 | |
| QA-00011 | CCT Fuel Tank located at the Staging Area Deficiencies listed below are based on observations made by | Fuel Storage | QA Concurs Corrected | 10 Mar 2011 | |

Status: All

Range: All Locations

Sort: Item No.



**US Army Corps of Engineers**

# Deficiency Items Issued by QA/QC

17 Sep 2012

114572 Site 1 Impoundment Phase 1
W912EP-10-C-0042  NA

Palm Beach County, FL

| Item Number | Description | Location | Status | Date (Issued) | Age (Days) |
|---|---|---|---|---|---|
| | the Corp's Chief of Safety (Anthony Santana) from his site visit on February 25, 2011:<br>1. Observed a fire extinguisher with no Inspection accomplished, nor was it properly mounted or readily accessible as it lay in the bed on the Polaris 4X4.  09. E.01, 09.E.03.<br>2. Fuel storage tank no fire extinguisher noted in fuel area. Minimum 20 lb fire extinguisher is required. 09.B.03, b.<br>3. Observed fuel tank being utilized w/o an attached ground to tank nor a install ground rod. Note: ground rod was not of required design length. 11.D.02, b & 11.D.03, a.<br>4. Observed no fuel warning placards on fuel tank or in immediate area. 08.A.01, 02, 03 & 04, also 09.A.06 A & 09.B.02.<br>5. Improper adjustable mechanical band observed on the fuel and air hose attached to fuel tank. 20.B.03.<br>(GAG) | | | | |
| QA-00012 | CCT Service Truck<br>Deficiencies listed below are based on observations made by the Corp's Chief of Safety (Anthony Santana) from his site visit on February 25, 2011:<br>1. Service truck # C583LM power lift did not have a recent Inspection tag. Question asked was an Inspection accomplished and if not it was recommended power lift be properly tagged out and removed from of service. 08.A.15 & 18.A.03.<br>2. Observed on the service truck # C583LM a fire extinguisher with no Inspection accomplished, nor was it accessible as it was covered with equipment 09. E.01 & 09.E.03.<br>3. Observed acetylene and oxygen hoses with Improper adjustable mechanical band repairs being utilized. Several Items in service truck need to be corrected in this area. 20.B.03.<br>4. Observed a fire extinguisher with no Inspection accomplished, nor was it properly mounted or readily accessible as it lay in the bed of service truck # C583LM. Note: fire extinguisher is spent and should be red tagged.  09. E.01, 09.E.03 & 08.A.10.<br>5. Observed improperly storage of batteries. 11.G.01.<br>(GAG) | ServiceTruck | QA Concurs Corrected | 10 Mar 2011 | |
| QA-00013 | Crane offloading Sheetpile along the L-40 Levee<br>Deficiencies listed below are based on observations made by the Corp's Chief of Safety (Anthony Santana) from his site visit on February 25, 2011:<br>1. Per operator max weight pickup is 10, 200K and when asked for the load chart they were not available nor posted in the crane cab. 16.G.01, c & ANSI B30.5 (1988), Section 5 -1.1 - Load Ratings, 5-1.1.3 Load Rating Chart. Item is required.<br>2. Checked location requirements of electrical warning placards and hand signal requirements placards and both were missing. ANSI B30.5 (1988), Section 5 -3.3.2 Hand Signals. This Item is required.<br>3. Observed crane leveling pedestals were not level nor correctly set or property blocked per manufacture recommendation. 18.J.03, a & d(2).<br>(GAG) | Sheet Pile | QA Concurs Corrected | 10 Mar 2011 | |
| QA-00014 | Callaway Barge & Crane for Sheepile Installation<br>Deficiencies listed below are based on observations made by the Corp's Chief of Safety (Anthony Santana) from his site visit on February 25, 2011:<br>1. No flash arrestor observed on Acetylene and Oxygen torch. Check valves were in place. 10.D.07, a.<br>2. Observed no fire extinguisher Inspections. General observation. 06.E.01.<br>3. MSDS are not located on the crane barge and are not available at this location. 06.B.01, c | Crane Barge | QA Concurs Corrected | 10 Mar 2011 | |



**US Army Corps of Engineers**

## Deficiency Items Issued by QA/QC

17 Sep 2012

114572 Site 1 Impoundment Phase 1
W912EP-10-C-0042 NA

Palm Beach County, FL

| Item Number | Description | Location | Status | Date Issued | Age (days) |
|---|---|---|---|---|---|
| | 4. No inventory being accomplished on first aid station on crane barge. 03.B.02. | | | | |
| | 5. There was no wind meter observed either installed on the lattice boom nor in the crane cab. Captain stated he did not have one. 16. L.06, a. | | | | |
| | 6. Load charts were not posted nor securely fixed to the crane cab in a location easily visible to the crane operator while seated at his control station. 16.G.01, c & ANSI B30.5 (1968), Section 5 -1.1 - Load Ratings, 5-1.1.3 Load Rating Chart. Item is required. | | | | |
| | 7. Observed no fire extinguisher in the crane cab and/or in the vicinity of crane cab with up to date inspection. 09. E.01, 09.E.03 & ANSI B30.5 (1968), Section 5 -3.4.9 - Fire Extinguishers a & b. | | | | |
| | 8. Attach to life ring automatic electric lights. 05.J.06, a & d (1 - 3). | | | | |
| | 9. Improperly stored flammables and utilization of improper flammable storage container observed. 09.B.12 (GAG) | | | | |
| QA-00015 | Callaway Tug Boat located at Sheetpile Installation Deficiencies listed below are based on observations made by the Corp's Chief of Safety (Anthony Santana) from his site visit on February 25, 2011: | Barge Tug | QA Concurs Corrected | 10 Mar 2011 | |
| | 1. Observed 3 cracked wind shield windows on the tug. 18.G.09, h. | | | | |
| | 2. No confine identified at the access hatch to engine room. 34.B.01, a & c -d(3). | | | | |
| | 3. Ventilation required inside of engine room as fume odors were noticed. 19.A.10, a & b. | | | | |
| | 4. Machine guards are needed on both engine room alternators. 18.A.05, o. | | | | |
| | 5. No CO2 monitor observed inside the pilot house. 19.A.05, h. | | | | |
| | 6. Pilot house fire extinguisher not properly installed. 09.E.03. | | | | |
| | 7. Observed no rubber insulation mat below the main electrical panel in the pilot house. 11.A.07. | | | | |
| | 8. Properly mount life ring and attached automatic electric lights. 05.J.06, a & d (1 - 3). (GAG) | | | | |
| QA-00016 | CCT Fuel/Service truck Deficiencies listed below are based on observations made by the Corp's Chief of Safety (Anthony Santana) from his site visit on February 25, 2011: | Fuel Truck | QA Concurs Corrected | 10 Mar 2011 | |
| | 1. Machine guard is missing at the compressor pulley. 18.B.03. | | | | |
| | 2. Observed positive latch open device at the service nozzle. 0-9.ZB.22, a. | | | | |
| | 3. Observed air compressor pressure hoses with improper adjustable mechanical bend repairs being utilized. Several items in service truck needs to be corrected in this area. 20.B.02 & 20.B.03. | | | | |
| | 4. Fuel truck tanks needs to be electronically grounded and bonded. 08.B.21, b. Item is required and of concern. | | | | |
| | 5. Remove or replaced cracked air hose in reel mounted on fuel truck. 20.A.05. | | | | |
| | 6. Fuel truck had no fire extinguisher, readily accessible nor a required inspection accomplished. Minimum 20 lb fire extinguisher is required. 09.B.03, b., 09.E.01 and 09.E.03. | | | | |
| | 7. House cleaning of vehicle is necessary and required. 09.A.10. | | | | |
| | 8. There was no observed containment on the fuel truck. 09.B.18. It appears there are no spill response procedures or material on the truck. Fuel truck requirements as noted and referred needs to be verified to be in compliance. 09.B.09, 09.B.10 & 09.B.22, e. | | | | |
| | 6. Did not observe a separation by either distance or a 1 hour fire rating partition between the gas air compressor and the two 200 gallon diesel fuel tanks. 09.B.21, d. | | | | |



**US Army Corps of Engineers**

## Deficiency Items Issued by QA/QC

114572 Site 1 Impoundment Phase 1
W912EP-10-C-0042 NA

17 Sep 2012

Palm Beach County, FL

| Item Number | Description | Location | Status | Date Issued (days) |
|---|---|---|---|---|
| | (GAG) | | | |
| QA-00017 | Access/Haul Road width from the Contractor's Staging Area to the L-40 Levee is below the required width for two-way traffic. Contractor's approved Traffic Control Plan shows two-way haul roads will be 30 feet in width. Use of the levee as a haul road was approved in the last traffic Control Plan addendum; however no flagman or signs of two-way communication between the two haul roads leading up to the levee have been observed. (GAG) | Haul Roads | QA Concurs Corrected | 01 Apr 2011 |
| QA-00018 | Corps has not observed the archaeologist onsite since March 31st. The Contractor is required to have an approved arcaeological monitor onsite during ground disturbing activities. (Spec. 01 57 20, para. 3.1.3.2 "Known Resources") (GAG) | Borrow Pit | QA Concurs Corrected | 06 Apr 2011 |
| QA-00019 | Contractor is proceeding with installation of walers and batterplies using a redesign that has not been submitted to the Government for review and approval. Transmittal 35 41 00-2 for the Sheetpiling/Dewatering Coffercell was returned to the Contractor on 09 DEC 2010 with a "B" action code. Observations from the field today show that the batter pile spacing, length, angle, waler location, and connections are not being constructed as reviewed and approved by the Government. (GAG) | L-40 Canal | QA Concurs Corrected | 12 Apr 2011 |
| QA-00020 | Please provide:<br>01 35 26 p. 1.5.3.2 safety meetings - attach minutes of wkly meeting to QC reports<br>01 45 04 p.3.9 documentation - a CQC report will supporting attachments shall be prepared daily -Submit prep and initial paper work Submit equipment checklist Submit any permits, etc.<br><br>(SMM) | *Submittals | QA Concurs Corrected | 25 Apr 2011 |
| QA-00021 | Please correct the following deficient item:<br><br>01 50 02 p. 3.6.3.1 maintenance of storage area with trailers are located, vegetation shall be edged or trimmed, etc.<br><br>(SMM) | Project Site | QA Concurs Corrected | 25 Apr 2011 |
| QA-00022 | Please provide:<br><br>01 57 20 p. 3.1.5.4h reporting - bimonthly report of snake sighting, when no sightings report shall reflect this.<br><br>31 11 00 p. 3.2.1.6.work scheduled (Clearing and Grubbing) - shall be submitted by COB every Friday for approval of plans for activities for the week ahead.<br>(SMM) | *Submittals | QA Concurs Corrected | 25 Apr 2011 |
| QA-00023 | Please correct the following deficiency:<br><br>01 50 02 p. 3.5c. maintenance of haul roads/access roads<br><br>01 50 02 p. 3.5f. edges of usable portion marked with posts at intervals of 50 feet on curves and 200 feet elsewhere.  (SMM) | Haul Roads | QA Concurs Corrected | 26 Apr 2011 |
| QA-00024 | Please provide the following deficient item:<br><br>01 50 02 p. 3.7 site security  at all times when no onsite construction activities | Project Site | QA Concurs Corrected | 26 Apr 2011 |



**US Army Corps of Engineers**

## Deficiency Items Issued by QA/QC

17 Sep 2012

114572 Site 1 Impoundment Phase 1
W912EP-10-C-0042 NA

Palm Beach County, FL

| Item Number | Description | Location | Status | Date Issued | Age (days) |
|---|---|---|---|---|---|
| | (SMM) | | | | |
| QA-00026 | Please correct the following deficiency: 01 45 04 p. 1.1.5.3a. Daily contractor Quality Control Reports - Electronically submit reports to the Govt within 24 hours after the date covered by the report. (SMM) | *Submittals | QA Concurs Corrected | 28 Apr 2011 | |
| QA-00027 | Observed individual operating the barge mounted crane who has not been approved by the Corps. Proof of Qualifications for Crane Operators is required Government submittal that must be reviewed and approved by the Corps. (GAG) | L-40 Canal | QA Concurs Corrected | 03 May 2011 | |
| QA-00028 | Handicap designated parking spaces and signage has not been provided, see Spec. 01 50 02. (GAG) | Staging Area | QA Concurs Corrected | 03 May 2011 | |
| QA-00029 | Earthen plug located near STA 146+40 was not constructed per the conditionally approved submittal (See Trans. 35 41 00-8.1). The sheetpile does not appear to penetrate the plug as shown on the sketch provided in the submittal. A minimum side slope of 4:1 was shown on the sketch, however the slopes in the field at both plugs (146+40 and 125+50) exceed the 4:1 min slope. Furthermore, comments to this conditionally approved earthen plug submittal (Action Code "C") have not been addressed to date. (GAG) | Earthen Plug | QA Concurs Corrected | 13 Jul 2011 | |
| QA-00030 | Contractor began excavation south of the levee prior to installing a functioning dewatering system. A functioning dewatering operation must be in place prior to the removal of any embankment or underlying foundation materials, as required in para. 3.5.6 (Spec. 35 41 00) and the Contractor's approved excavation plan. (GAG) | L-40 Levee | QA Concurs Corrected | 26 Aug 2011 | |
| QA-00031 | Government has not received soil classification test results from Contractor for embankment fill and in-situ foundation material since tests were taken last week. Test reports are to be submitted within 24 hours of all physical tests (see SD-06 "Materials Testing" submittal on page 10, Spec 35 41 00) (GAG) | L-40 Levee | QA Concurs Corrected | 14 Sep 2011 | |
| QA-00032 | Key ditches for sub-sections 1AS, 1CS, and 1ES are located within the foundation. These ditches are not in compliance with Spec. 35 41 00 "Earthwork and Embankment Modification", paragraph 3.5, which states "Excavation shall consist of removal of material to the lines and grades shown on the drawings". Per paragraph 5.4 of your approved Surface and Groundwater Control Plan states "A key ditch will be excavated immediately south of each 500-foot section, which will act as a dewatering sump". Figure 5.3 of the same plan shows the key ditch separate from the proposed levee excavation. Reference Government Serial Letter C-0074. (GAG) | L-40 Levee | QA Concurs Corrected | 28 Sep 2011 | |
| QA-00033 | Silt fencing is down along the entrance road. (EHS) | Project Site | QA Concurs Corrected | 10 Nov 2011 | |
| QA-00034 | Stored materials TRF matting rolls are exposed to direct sun light (EHS) | Staging Area | QA Concurs Corrected | 10 Nov 2011 | |
| QA-00035 | To date no surveys of the fine drainage gravel placed along the north or south slopes of Section 1 have been submitted to the Government for review and approval. Survey submittal is required per Spec. 25 31 19 "Stone Protection" para. 1.3 submittals, and para. 1.4.3 "Placement Control Surveys". (GAG) | #89 Stone | QA Concurs Corrected | 22 Jan 2012 | |
| QA-00036 | The Soil Cement Test Section was placed on December 28, 2011 and January 5, 2012. Required test report submittals for Density, Compressive Strength, and Moisture Content have not | SC Test 3 | QA Concurs Corrected | 22 Jan 2012 | |

Status: All                Range: All Locations                Sort: Item No



**US Army Corps
of Engineers**

## Deficiency Items Issued by QA/QC

17 Sep 2012

114572 Site 1 Impoundment Phase 1
W912EP-10-C-0042 NA

Palm Beach County, FL

| Item Number | Description | Location | Status | Date Issued | Age (Days) |
|---|---|---|---|---|---|
| | been submitted to the Government for review and approval. (GAG) | | | | |
| QA-00037 | KTR applied curing compound to soil cement after final lift was rolled out to compaction, some areas that had loose soil cement on the surface needs to be swept off before curing compound is applied. (EHS) | SC 1CS/1BS | QA Concurs Corrected | 01 Feb 2012 | |
| QA-00038 | Curing with water sprinkler system was not continuous for 7 days.Sprinkler was shut down over night and soil cement was not moist in several areas of the slab placed on Friday. KTR Did not fully comply with Spec section 31 35 30 , 3.10.1 Exposed Surfaces Temporarily exposed surfaces of soil-cement that will be in contact with succeeding soil-cement placement shall be kept continuously moist by moist curing or until placement of the subsequent layer. Curing of permanently exposed surfaces shall begin immediately after compaction and shall continue for at least 7 days. Soil-cement shall be cured and protected from premature drying, extremes in temperature, rapid temperature change, mechanical damage and exposure to rain or flowing water. The Contractor shall have all equipment needed for adequate curing and protection on hand and ready to install before actual placement begins. The Government shall approve the curing medium and method, or the combination of mediums and methods used. All soil-cement shall be protected from the damaging effects of rain for 8 hours and from flowing water for 7 days. (EHS) | SC 1BS | QA Concurs Corrected | 28 Jan 2012 | |
| QA-00039 | Initial Phase Meeting has not been held for Sub-surface Drilling for Instrumentation. Preparatory meeting held on site January 23, 2012. The wells for instrument Groups N1 and N2 have been drilled and casings installed and appear to be ready for placement of Instrumentation. Per Spec. 01 45 04, para. 3.6.2 "Initial Phase is workmanship oriented and shall be accomplished at the beginning of physical work on a definable feature of work". (GAG) | L-40 Levee | QA Concurs Corrected | 06 Feb 2012 | |
| QA-00040 | Silt fencing is not being maintained throughout the project. Contractor is not compiling with Permit .Section 12. page 11. (EHS) | project site | QA Concurs Corrected | 17 Feb 2012 | |
| QA-00041 | Superintendent for CCT's vehicle (Black Toyota Pickup) observed passing a dump truck from behind heading west bound on top of the L-40 Levee. The dump truck came to a stop as a Euclid R-50 was approaching from the east. Corps QA rep observed CCT vehicle passed both trucksalong the right side of the levee (approx. 4 to 1 slope) passing both dump truck and Euclid, In the vicinity of Station 124+00 +/-.  (GAG) | L-40 Levee | QA Concurs Corrected | 07 Mar 2012 | |
| QA-00042 | I inspected the TRM matting placed on top of the levee and the rolled up material is being exposed to sun light. The covers on the TRM needs to be re-packaged or tapped up. (EHS) | | QA Concurs Corrected | 15 Mar 2012 | |
| QA-00043 | As of COB Monday Apr. 2, 2012, QC reports are 9 calendar days deficient: Per SECTION 01 45 04 p.1.1.5.3 Quality Control s. Daily Contractor Quality Control (CQC) Reports. Electronically | | QA Concurs Corrected | 02 Apr 2012 | |

Status: All

Range: All Locations

Sort: Item No



**US Army Corps of Engineers**

## Deficiency Items Issued by QA/QC

114572 Site 1 Impoundment Phase 1
W912EP-10-C-0042  NA

17 Sep 2012

Palm Beach County, FL

| Item Number | Description | Location | Status | Date Issued | Age (days) |
|---|---|---|---|---|---|
| | submit reports to the Government within 24 hours after the date covered by the report. Also provide the Government a signed, printed copy of the daily CQC report. (SMM) | | | | |
| QA-00044 | Contractor began installing ACBM today, installing 4 units of matting. The matting was placed on top of the GEO tech fabric which was rolled up on top of the soil cement slab. The GEO fabric was exposed to the sun light for over 6 days, which doesn't comply with RFI response letter # 34. Which stated the fabric could be exposed for 5 days. (EHS) | 1AS Base | QA Concurs Corrected | 05 Apr 2012 | |
| QA-00045 | As of June 11, 2012 the Contractor is no longer providing 24-Hour security as required per Spec. 01 50 02, para. 3.7.There's been no evidence of security onsite over the past few days when Corps staff has arrived onsite. It's understood that the new security company is onsite for most of the evening and locks the gates and leaves the site at approximately 1:00 am. (GAG) | Project Site | Not Reported Corrected | 13 Jun 2012 | 96 |
| QA-00046 | QC reports are deficient by over 6 days: This is an ongoing issue.... Per SECTION 01 45 04 p.1.1.6.3 Quality Control a. Daily Contractor Quality Control (CQC) Reports. Electronically submit reports to the Government within 24 hours after the date covered by the report. Also provide the Government a signed, printed copy of the daily CQC report. (SMM) | *Submittals | Not Reported Corrected | 06 Jun 2012 | 101 |
| QA-00047 | Prime has not properly covered exposed Turf Reinforced Mat (TRM) in Section 1CN. Attention to this problem has been made repeatedly to the Project Manager, QC Manager, and on site Supervisor. (RAF) | Section 1CN | Not Reported Corrected | 09 Jul 2012 | 70 |
| QA-00048 | Prime has not properly covered exposed geotextile fabric in Sections 2AS thru 2DS. Attention to this problem has been made repeatedly to the Project Manager, QC Manager, and on site Supervisor. (RAF) | Sections 2AS | Not Reported Corrected | 09 Jul 2012 | 70 |
| QC-00001 | The excavation near the dewatering pump within the Borrow Pit has not been pulled back to the required slope.  The subcontractor was directed to correct this deficiency. The sheer slope does not meet the minimum requirements of the Specs. In addition, it is a safety concern in particular because of the need to service the hydraulic pump in this area. | Borrow Pit | QA Concurs Corrected | 17 Feb 2011 | |
| QC-00002 | Current sheetpile driving operations have the turbidity screen surrounding the pile driving template to ensure that turbidity does not escape the work area.  As per the contractor's EPP, it was noted that turbidity screen would surround the barge. The subcontractor has been notified and intends to surround the barge with turbidity screen as well. A revision to the EPP will be prepared to address the most effective and efficient means of controlling turbidity now that operations have begun. To date turbidity readings as a result of sheetpile driving operations have been zero. | L-40 Canal | QA Concurs Corrected | 17 Feb 2011 | |
| QC-00003 | CMT deckhand was observed climbing the leads for the diesel hammer without proper fall protection. Subcontractor was | Barge Tug | QA Concurs Corrected | 16 Mar 2011 | |



**US Army Corps of Engineers**

## Deficiency Items Issued by QA/QC

17 Sep 2012

114572 Site 1 Impoundment Phase 1
W912EP-10-C-0042  NA

Palm Beach County, FL

| Item Number | Description | Location | Status | Date Issued | Age (days) |
|---|---|---|---|---|---|
| | directed to cease activity unless fall protection was used.  CMT ceased activities. | | | | |
| QC-00004 | Missing access hatch to engine room confined space entry sticker on tug. | Barge Tug | QA Concurs Corrected | 10 Mar 2011 | |
| QC-00005 | Due to excessive rain fall, the water level in the dewatering storage area reached extremely high levels. LCI directed CCT to either stop dewatering or repair the berm around the first dewatering storage area and reroute effluent into this unused basin.<br><br>CCT connected the two basins immediately for storage relief. | Borrow Pit | QA Concurs Corrected | 01 Apr 2011 | |
| QC-00006 | Barge pile driver broke hydraulic line.  Fluids contained and it was environmentally safe fluid, vegetable oil. | L-40 Canal | QA Concurs Corrected | 11 Apr 2011 | |
| QC-00007 | Callaway Marine Technologies, Inc. crane operator, Rick Verney was not feeling well and left the jobsite. Charles Callaway allowed another certified operator to work on the barge prior to getting approval from LCI SSHO or USACE. In addition, LCI was not notified of the change in crane operator.<br><br>Callaway Marine provided a copy of the substitute operator's certification.<br><br>Callaway Marine will have someone approved as backup in accordance with plans and specs | Crane Barge | QA Concurs Corrected | 03 May 2011 | |
| QC-00008 | CCT had people standing in a loader bucket trying to install a screen in a screen plant.  Personnel not briefed on safety, and proceeded to go on site without stopping at the office and signing in.<br><br>Corrective Action:<br>Plant was removed until it was inspected, completed and personnel was briefed and safety certified | Project Site | QA Concurs Corrected | 17 Jun 2011 | |
| QC-00009 | CCT's mechanic was working on an excavator's long stick atop the boom without proper PPE.<br>The mechanic was removed from the equipment and his supervisor was notified as well as the owner of the company.  A harness was provided and the mechanic was trained on the proper wear.  It was clearly stated that fall protection is required. | | QA Concurs Corrected | 08 Dec 2011 | |
| QC-00010 | 31 35 30 3.11 Joints/Lifts-Subcontractor CCT did not have wire bristle power broom on site per approved soil cement installation plan | SC Test | QA Concurs Corrected | 13 Dec 2011 | |
| QC-00011 | 31 35 30 1.5.11 Water Curing Equipment- Subcontractor CCT failed to provide fine mist sprayer on water truck or 1000 gallon 24 hour tank with fine mist sprayer | SC Test | QA Concurs Corrected | 13 Dec 2011 | |
| QC-00012 | 31 35 30 3.7.2 Transporting-Subcontractor CCT did not have protective covers for use in unfavorable weather. | SC Test | QA Concurs Corrected | 13 Dec 2011 | |
| QC-00013 | 31 35 30 3.9 Compaction-Subcontractor CCT did not have acceptable 10 ft. straight edge available | SC Test. | QA Concurs Corrected | 13 Dec 2011 | |
| QC-00014 | 31 35 30 3.10.1 Exposed Surfaces-Subcontractor CCT failed to keep temporarily exposed surfaces of soil cement continuously moist prior to succeeding soil cement placement. | SC Test | QA Concurs Corrected | 13 Dec 2011 | |
| QC-00015 | 31 35 30 1.5.8 Spreading- Subcontractor CCT failed to properly control thickness of lifts to within specification due to | SC Test | QA Concurs Corrected | 13 Dec 2011 | |



**US Army Corps of Engineers**

# Deficiency Items Issued by QA/QC

17 Sep 2012

114572 Site 1 Impoundment Phase 1
W912EP-10-C-0042  NA

Palm Beach County, FL

| Item Number | Description | Location | Status | Date Issued | Age (days) |
|---|---|---|---|---|---|
| | malfunction of lazer guidance system on spreading equipment. | | | | |
| QC-00016 | 31 35 30 1.4.5 Flat Plate Soil Cement-Subcontractor CCT failed to properly install soil cement to specified lift thickness. | SC Test | QA Concurs Corrected | 13 Dec 2011 | |
| QC-00017 | 31 35 30 1.3 Equipment and Plans-Subcontractor CCT failed to utilize approved compaction equipment (Sakai 400D roller) due to malfunction and substituted unapproved equipment. | SC Test | QA Concurs Corrected | 13 Dec 2011 | |
| QC-00018 | 31 35 30 1.5.10 Compaction Equipment-Subcontractor CCT failed to utilize approved light, walk behind compactor in areas in accessible to larger equipment | SC Test | QA Concurs Corrected | 13 Dec 2011 | |
| QC-00019 | 31 35 30 3.9 Compaction-Subcontractor CCT failed to adequately secure forms to prevent movement more than 1/4 inch. | SC Test | QA Concurs Corrected | 13 Dec 2011 | |
| QC-00020 | Subcontractor CCT failed to provide proper fuel containment for 6" pump on Batch Plant access road North of Batch Plant | BPlant Haul | QA Concurs Corrected | 13 Dec 2011 | |
| QC-00021 | Subcontractor CCT failed to properly install 6"pump on Batch Plant haul road to protect from flooding | BPlant Haul | QA Concurs Corrected | 13 Dec 2011 | |
| QC-00022 | Subcontractor Big Tree failed to properly protect stored TRM materials from sunlight (uv) per specs | Storage Yard | QA Concurs Corrected | 13 Dec 2011 | |
| QC-00023 | Subcontractor failed to process borrow material properly in order to produce embankment fill meeting Particle size specification. Area of stockpile ¾ delineated by the following points 1) STA 126+79  4896 ft. right of levee baseline elev.17.553 2) STA 127+88  4937 ft. right of levee baseline elev. 13.3 N 733918 E 898974 3) STA 128+06  5005 ft. right of levee baseline elev. 21.7 N 733850 E 898993 4) STA 128+81  4849 ft. right of levee baseline elev. 22.72 N733906 E 899068 | Stockpile3/4 | QA Concurs Corrected | 21 Dec 2011 | |
| QC-00024 | Soil Cement Test Section-STA 137+60 to STA 138+20  b. Compaction equipment shall not cause cracking or other visible defects in the finished surface or within the compacted lift  Surface stress cracks from compaction equipment at the following locations: STA 138+85 to STA 137+90; Offset from Baseline-18.0 to 26.0 ft. Right STA 138+03 to STA 138+18; Offset from Baseline-7.0 to 46.0 ft. Right | SC Test | Not Reported Corrected | 16 Jan 2012 | 245 |
| QC-00025 | Soil Cement Test Section-STA 137+60 to STA 138+20 3.5 The surface shall be tested for trueness to a tolerance of +/- 0.1 feet over 10ft. 3.5 Cross section thickness tolerance -0.0 to +1.0 inch 3.5 Depressions shall be immediately filled with freshly mixed soil cement, struck off, compacted and refinished  Several dips/overbuilds creating more than 0.1 ft. in 10ft. variance and thickness deficiency less (less than 24", Over 25") in STA 137+95 to STA 138+20 Offset from base line 55ft. to 60.8ft. (south edge)  Joint/Depression repair-soil cement added for repair did not bond to underlying soil cement. Edges raveling; hollow between layers at STA 137+60 to STA138+20; 3ft. offset to 8ft.offset right. | SC Test | Not Reported Corrected | 16 Jan 2012 | 245 |



**US Army Corps of Engineers**

## Deficiency Items Issued by QA/QC

17 Sep 2012

114572 Site 1 Impoundment Phase 1
W912EP-10-C-0042 NA

Palm Beach County, FL

| Item Number | Description | Location | Status | Date Issued | Age (days) |
|---|---|---|---|---|---|
| QC-00026 | 3.11 Construction Joints shall be made to ensure continuity in smoothness and grade between old and next sections<br><br>Edges of soil cement along forms not graded level to create smooth transition to next section in STA 137+60; 7ft. offset left to 61ft. offset right and STA 138+20, 7ft. offset left to 6ft. offset right | SC Test | Not Reported Corrected | 16 Jan 2012 | 245 |
| QC-00027 | Soil Cement Test Section STA 137+00 to STA 137+60<br>3.6 The surface shall be tested for trueness to a tolerance of +/- 0.1 feet over 10ft.<br>3.6 Cross section thickness tolerance -0.0 to +1.0 inch<br>3.5 Depressions shall be immediately filled with freshly mixed soil cement, struck off, compacted and refinished<br><br>Depression repair hollow-did not adhere to underlying surface in STA 137+44 to STA 137+60 2.0 to 7.0ft. offset right<br><br>Surface tolerance greater than 0.1 ft. in 10 ft. and thickness outside tolerance of 24" to 25" in STA 137+11 offset 57.8ft. right elevation 11.6<br><br>Surface tolerance greater than 0.1 ft in 10 ft. and thickness outside tolerance of 24" to 25" in STA 134+40 to STA137+60 offset 55ft. to 61ft. right | SC Test | Not Reported Corrected | 16 Jan 2012 | 245 |
| QC-00028 | 3.11 Construction Joints shall be made to ensure continuity in smoothness and grade between old and next sections<br><br>Joint along form not finished to allow for smooth transition to next section in both<br>STA 137+60 and STA 137+00 - 70ft. offset left to 61ft. right<br><br>Depression repairs raveling and not properly finished for acceptable surface | SC Test | Not Reported Corrected | 16 Jan 2012 | 245 |
| QC-00029 | 3.2 Stockpiled material, Contractor shall be solely responsible for monitoring the uniformity of material<br><br>Surface defects in soil cement due to recemented clumps of screened aggregated caused by extensive storage and improper remixing of stockpiled material in STA137+26-12.2ft. offset right elevation 23.0 | SC Test | QA Concurs Corrected | 16 Jan 2012 | |
| QC-00030 | 2.2.1 PDEA-The maximum spacing is shown on the drawings<br>1.2 Submittals<br>SD-01 TRM Installation Plan-Shows seam overlap pinning/anchoring spacing and layout<br>SD-02 Shop Drawings- Installation details-show installation details, seam overlap, pinning/anchoring Spacing<br><br>Subcontractor failed to install TRM per specs and drawings (roll orientation) and approved submittals<br>Subcontractor failed to install PDEA per specs and drawings (PDEA spacing) and approved submittals | TRM 1CN | QA Concurs Corrected | 18 Jan 2012 | |
| QC-00031 | CCT-was issued a deficiency on April 6, 2012 as follows: Subcontractor failed to protect areas of any unfinished surface or joint or locations where new soil cement or grout will be placed, from application of curing compound. | Soil Cement | QA Concurs Corrected | 12 Apr 2012 | |

Status: All

Range: All Locations

Sort: Item No



US Army Corps
of Engineers

# Deficiency Items Issued by QA/QC

114572 Site 1 Impoundment Phase 1
W912EP-10-C-0042 NA

17 Sep 2012

Palm Beach County, FL

| Item Number | Description | Location | Status | Date Issued | Age (days) |
|---|---|---|---|---|---|
| | Subcontractor failed to remove improperly applied curing compound from those areas to receive grout. | | | | |
| QC-00032 | EPP was issued a deficiency on April 12, 2012. Subcontractor installed aluminum (instead of copper) crimped grommets between 8ft. ACB mats along interface (within 1 block width) of soil cement where grout will be installed, as required in the approved submittals. | *EPP | QA Concurs Corrected | 12 Apr 2012 | |



# Deficiency Items Issued by QA/QC

17 Sep 2012

**114572 Site 1 Impoundment Phase 1**
**W912EP-10-C-0042 NA**

US Army Corps of Engineers

Palm Beach County, FL

| Item Number | Description | Location | Status | Date Issued | Age (days) |
|---|---|---|---|---|---|
| QA-00001 | The following Preconstruction Submittals and Shop Drawings are past due and were required to be submitted within 30 days of NTP: Mobilization/Demobilization Plan, Security Plan, Contractor's Temporary Facilities, Contracting Officer's Trailer, and Vibration Control Plan. (GAG) | | QA Concurs Corrected | 22 Nov 2010 | |
| QA-00002 | The following observations were made today and must be addressed:<br>Connex # TPHU286739 used to store flammable material.<br>- Connex not properly labeled as flammable storage locker.<br>- Oxygen cylinders not properly secured.<br>- Flammables stored with combustibles material<br>- No MSDS on site for flammable( spray paint, paint, Oil)<br>- 55 gallon drums need to be properly stored<br>- Flammables stored in container marked " NOT FOR FLAMMABLE STORAGE"<br>(GAG) | Barrow pit | QA Concurs Corrected | 01 Feb 2011 | |
| QA-00003 | Slopes are veritical and undermining contractor should be laying slopes back on 2 to 1 as described on drawing G-104 (GAG) | Barrow pit | QA Concurs Corrected | 01 Feb 2011 | |
| QA-00004 | Reference Spec. 40 95 00, under submittals on Pages 7 to 9. The following submittals are overdue:<br>- "Training Manual" due within 90 days of Notice To Proceed<br>- Shop Drawings and data prepared by the Single I&C sub-contractor due within 80 days of Notice To Proceed. (GAG) | *Submittals | QA Concurs Corrected | 01 Feb 2011 | |
| QA-00005 | Under Spec. 31 35 30 "Soil Cement Slope Protection", we have not received the following Preconstruction Submittals for "Equipmen & Plans":<br>- Hauling Equipment<br>- Placement Equipment<br>- Compaction Equipment<br>- Placing & Spreading Plan (GAG) | *Submittals | QA Concurs Corrected | 01 Feb 2011 | |
| QA-00006 | Per Contract Specification Section 01 50 02 p. Security Plan:<br><br>Provide site security person at all times when there are no on-site activities. Maintain 24-hour security during weekends and holidays.<br><br>Per Transmittal 01 50 02-2:<br>Lodge Construction will be installing day and night time cameras that have remote access at the field offices, the fuel and equipment storage staging areas and the batch plant.<br><br>Security shall be provided for this project (SMM) | *Submittals | QA Concurs Corrected | 12 Feb 2011 | |
| QA-00007 | no tribituly barrier around floating plant as described in EPP section 7.4.4 (CSM) | *EPP | QA Concurs Corrected | 16 Feb 2011 | |
| QA-00008 | no tribituly barrier around discharge point in hillsboro canel as described in EPP Figure 7.1 (CSM) | *EPP | QA Concurs Corrected | 16 Feb 2011 | |
| QA-00009 | A Site Security Person has not been provided by the Contractor for this worksite. A Site Security Person is required during hours of no work, which may include weekends and holidays. See Para. 3.7 "Security Plan", Spec. 01 50 02. (GAG) | Project Site | QA Concurs Corrected | 04 Mar 2011 | |
| QA-00010 | The Corps' QA survey performed on February 24, 2010 shows sections of Borrow Pit 1 where the side slopes are steeper than required 2 to 1 slopes (Reference Detail "B" Plan Sheet G-104 for required slopes (GAG | Borrow Pit | QA Concurs Corrected | 04 Mar 2011 | |
| QA-00011 | JOT Fuel Tank located at the Staging Area. Deficiencies listed below, are based on obser. vations made by | Fuel Storage | QA Concurs Corrected | | |

| Status: All | Range: All Locations | Sort: Item No |
|---|---|---|



# Deficiency Items Issued by QA/QC

17 Sep 2012

**US Army Corps of Engineers**

114572 Site 1 Impoundment Phase 1
W912EP-10-C-0042  NA

Palm Beach County, FL

| Item Number | Description | Location | Status | Date Issued | Age (days) |
|---|---|---|---|---|---|
| | the Corp's Chief of Safety (Anthony Santana) from his site visit on February 25, 2011:<br>1. Observed a fire extinguisher with no inspection accomplished, nor was it properly mounted or readily accessible as it lay in the bed on the Polaris 4X4.  09. E.01, 09.E.03.<br>2. Fuel storage tank no fire extinguisher noted in fuel area. Minimum 20 lb fire extinguisher is required. 09.B.03, b.<br>3. Observed fuel tank being utilized w/o an attached ground to tank nor a install ground rod. Note: ground rod was not of required design length. 11.D.02, b & 11.D.03, a.<br>4. Observed no fuel warning placards on fuel tank or in immediate area. 08.A.01,  02, 03 & 04, also 09.A.06 A & 09.B.02.<br>5. Improper adjustable mechanical band observed on the fuel and air hose attached to fuel tank. 20.B.03.<br>(GAG) | | | | |
| QA-00012 | CCT Service Truck<br>Deficiencies listed below are based on observations made by the Corp's Chief of Safety (Anthony Santana) from his site visit on February 25, 2011:<br>1. Service truck # C583LM power lift did not have a recent inspection tag. Question asked was an inspection accomplished and if not it was recommended power lift be properly tagged out and removed from of service. 08.A.15 & 18.A.03.<br>2. Observed on the service truck # C583LM a fire extinguisher with no inspection accomplished, nor was it accessible as it was covered with equipment 09. E.01 & 09.E.03.<br>3. Observed acetylene and oxygen hoses with improper adjustable mechanical band repairs being utilized. Several items in service truck need to be corrected in this area. 20.B.03.<br>4. Observed a fire extinguisher with no inspection accomplished, nor was it properly mounted or readily accessible as it lay in the bed of service truck # C583LM. Note: fire extinguisher is spent and should be red tagged.  09. E.01, 09.E.03 & 08.A.10.<br>5. Observed improperly storage of batteries. 11.G.01.<br>(GAG) | ServiceTruck | QA Concurs Corrected | 10 Mar 2011 | |
| QA-00013 | Crane offloading Sheetpile along the L-40 Levee<br>Deficiencies listed below are based on observations made by the Corp's Chief of Safety (Anthony Santana) from his site visit on February 25, 2011:<br>1. Per operator max weight pickup is 10, 200K and when asked for the load chart they were not available nor posted in the crane cab. 16.G.01, c & ANSI B30.5 (1968), Section 5 -1.1 - Load Ratings, 5-1.1.3 Load Rating Chart. Item is required.<br>2. Checked location requirements of electrical warning placards and hand signal requirements placards and both were missing. ANSI B30.5 (1968), Section 5 -3.3.2 Hand Signals. This item is required.<br>3. Observed crane leveling pedestals were not level nor correctly set or properly blocked per manufacture recommendation. 16.J.03, a & d(2).<br>(GAG) | Sheet Pile | QA Concurs Corrected | 10 Mar 2011 | |
| QA-00014 | Callaway Barge & Crane for Sheepile Installation<br>Deficiencies listed below are based on observations made by the Corp's Chief of Safety (Anthony Santana) from his site visit on February 25, 2011:<br>1. No flash arrestor observed on Acetylene and Oxygen torch. Check valves were in place. 10.D.07, a.<br>2.  Observed no fire extinguisher inspection. General observation. 06.E.01.<br>3. MSDS are not located on the crane barge and it was not available at this location. 06.B.01, g. | Crane Barge | QA Concurs Corrected | 10 Mar 2011 | |



## Deficiency Items Issued by QA/QC

17 Sep 2012

**US Army Corps of Engineers**

114572 Site 1 Impoundment Phase 1
W912EP-10-C-0042  NA

Palm Beach County, FL

| Item Number | Description | Location | Status | Date Issued | Age (days) |
|---|---|---|---|---|---|
| | 4. No inventory being accomplished on first aid station on crane barge. 03.B.02.<br>5. There was no wind meter observed either installed on the lattice boom nor in the crane cab. Captain stated he did not have one. 16. L.06, a.<br>6. Load charts were not posted nor securely fixed to the crane cab in a location easily visible to the crane operator while seated at his control station.  16.G.01, c & ANSI B30.5 (1968), Section 5 -1.1 - Load Ratings, 5-1.1.3 Load Rating Chart. Item is required.<br>7. Observed no fire extinguisher in the crane cab and/or in the vicinity of crane cab with up to date inspection. 09. E.01, 09.E.03 & ANSI B30.5 (1968), Section 5 -3.4.9 - Fire Extinguishers a & b.<br>8. Attach to life ring automatic electric lights. 05.J.06, a & d (1 - 3).<br><br>9. Improperly stored flammables and utilization of improper flammable storage container observed. 09.B.12<br>(GAG) | | | | |
| QA-00015 | Callaway Tug Boat located at Sheetpile Installation<br>Deficiencies listed below are based on observations made by the Corp's Chief of Safety (Anthony Santana) from his site visit on February 25, 2011:<br>1. Observed 3 cracked wind shield windows on the tug. 18.G.09, h.<br>2. No confine identified at the access hatch to engine room. 34.B.01, a & c -d(3).<br>3. Ventilation required inside of engine room as fume odors were noticed. 19.A.10, a & b.<br>4. Machine guards are needed on both engine room alternators. 19.A.05, o.<br>5. No CO2 monitor observed inside the pilot house. 19.A.05, h.<br>6. Pilot house fire extinguisher not properly installed. 09.E.03.<br>7. Observed no rubber insulation mat below the main electrical panel in the pilot house. 11.A.07.<br>8. Properly mount life ring and attached automatic electric lights. 05.J.06, a & d (1 - 3).<br>(GAG) | Barge Tug | QA Concurs Corrected | 10 Mar 2011 | |
| QA-00016 | CCT Fuel/Service truck<br>Deficiencies listed below are based on observations made by the Corp's Chief of Safety (Anthony Santana) from his site visit on February 25, 2011:<br>1. Machine guard is missing at the compressor pulley. 18.B.03.<br>2. Observed positive latch open device at the service nozzle. 0-9.ZB.22, a.<br>3. Observed air compressor pressure hoses with improper adjustable mechanical band repairs being utilized. Several items in service truck needs to be corrected in this area. 20.B.02 & 20.B.03.<br>4. Fuel truck tanks needs to be electronically grounded and bonded. 09.B.21, b. Item is required and of concern.<br>5. Remove or replaced cracked air hose in reel mounted on fuel truck. 20.A.05.<br>6. Fuel truck had no fire extinguisher, readily accessible nor a required inspection accomplished. Minimum 20 lb fire extinguisher is required. 09.B.03, b., 09.E.01 and 09.E.03.<br>7. House cleaning of vehicle is necessary and required. 09.A.10.<br>8. There was no observed containment on the fuel truck. 09.B.18. It appears there are no spill response procedures or material on the truck. Fuel truck requirements as noted and referred needs to be verified to be in compliance. 09.B.09, 09.B.10 & 09.B.22. a<br>9. Did not observe a separation by some distance the 1 hour fire rating partition between the gas air compressor and the two 200 gallon diesel fuel tanks. 09.B.21. n | Fuel Truck | QA Concurs Corrected | 10 Mar 2011 | |

Status: All | Range: All Locations | Sort: Item No



# Deficiency Items Issued by QA/QC

17 Sep 2012

**US Army Corps of Engineers**

| 114572 Site 1 Impoundment Phase 1 | Palm Beach County, FL |
| --- | --- |
| W912EP-10-C-0042  NA | |

| Item Number | Description | Location | Status | Date Issued | Age (days) |
| --- | --- | --- | --- | --- | --- |
| | (GAG) | | | | |
| QA-00017 | Access/Haul Road width from the Contactor's Staging Area to the L-40 Levee is below the required width for two-way traffic. Contractor's approved Traffic Control Plan shows two-way haul roads will be 30 feet in width. Use of the levee as a haul road was approved in the last traffic Control Plan addendum; however no flagman or signs of two-way communication between the two haul roads leading up to the levee have been observed. (GAG) | Haul Roads | QA Concurs Corrected | 01 Apr 2011 | |
| QA-00018 | Corps has not observed the archaeologist onsite since March 31st. The Contractor is required to have an approved arcaeological monitor onsite during ground disturbing activities. (Spec. 01 57 20, para. 3.1.3.2 "Known Resources") (GAG) | Borrow Pit | QA Concurs Corrected | 06 Apr 2011 | |
| QA-00019 | Contractor is proceeding with installation of walers and batterpiles using a redesign that has not been submitted to the Government for review and approval. Transmittal 35 41 00-2 for the Sheetpiling/Dewatering Coffercell was returned to the Contractor on 09 DEC 2010 with a "B" action code. Observations from the field today show that the batter pile spacing; length, angle, waler location, and connections are not being constructed as reviewed and approved by the Government. (GAG) | L-40 Canal | QA Concurs Corrected | 12 Apr 2011 | |
| QA-00020 | Please provide: 01 35 26 p. 1.5.3.2 safety meetings - attach minutes of wkly meeting to QC reports 01 45 04 p.3.9 documentation - a CQC report will supporting attachments shall be prepared daily -Submit prep and initial paper work Submit equipment checklist Submit any permits, etc. (SMM) | *Submittals | QA Concurs Corrected | 25 Apr 2011 | |
| QA-00021 | Please correct the following deficient item: 01 50 02 p. 3.6.3.1 maintenance of storage area with trailers are located, vegetation shall be edged or trimmed, etc. (SMM) | Project Site | QA Concurs Corrected | 25 Apr 2011 | |
| QA-00022 | Please provide: 01 57 20 p. 3.1.5.4h reporting - bimonthly report of snake sighting, when no sightings report shall reflect this. 31 11 00 p. 3.2.1.6 work scheduled (Clearing and Grubbing) - shall be submitted by COB every Friday for approval of plans for activities for the week ahead. (SMM) | *Submittals | QA Concurs Corrected | 25 Apr 2011 | |
| QA-00023 | Please correct the following deficiency: 01 50 02 p. 3.5c. maintenance of haul roads/access roads 01 50 02 p. 3.5f. edges of usable portion marked with posts at intervals of 50 feet on curves and 200 feet elsewhere. (SMM) | Haul Roads | QA Concurs Corrected | 26 Apr 2011 | |
| QA-00024 | Please provide the following deficient item 01 50 02 p. 3.7 site security at all times when no onsite construction activities | Project Site | QA Concurs Corrected | 26 Apr 2011 | |

| Status: All | Range: All Locations | Sort: Item No |
| --- | --- | --- |



**US Army Corps of Engineers**

# Deficiency Items Issued by QA/QC

17 Sep 2012

**114572 Site 1 Impoundment Phase 1**
W912EP-10-C-0042 NA

Palm Beach County, FL.

| Item Number | Description | Location | Status | Date Issued | Age (days) |
|---|---|---|---|---|---|
| | (SMM) | | | | |
| QA-00026 | Please correct the following deficiency: 01 45 04 p. 1.1.5.3a. Daily contractor Quality Control Reports - Electronically submit reports to the Govt within 24 hours after the date covered by the report. (SMM) | *Submittals | QA Concurs Corrected | 26 Apr 2011 | |
| QA-00027 | Observed individual operating the barge mounted crane who has not been approved by the Corps. Proof of Qualifications for Crane Operators is required Government submittal that must be reviewed and approved by the Corps. (GAG) | L-40 Canal | QA Concurs Corrected | 03 May 2011 | |
| QA-00028 | Handicap designated parking spaces and signage has not been provided, see Spec. 01 50 02. (GAG) | Staging Area | QA Concurs Corrected | 03 May 2011 | |
| QA-00029 | Earthen plug located near STA 146+40 was not constructed per the conditionally approved submittal (See Trans. 35 41 00-8.1). The sheetpile does not appear to penetrate the plug as shown on the sketch provided in the submittal. A minimum side slope of 4:1 was shown on the sketch, however the slopes in the field at both plugs (146+40 and 125+50) exceed the 4:1 min slope. Furthermore, comments to this conditionally approved earthen plug submittal (Action Code "C") have not been addressed to date. (GAG) | Earthen Plug | QA Concurs Corrected | 13 Jul 2011 | |
| QA-00030 | Contractor began excavation south of the levee prior to installing a functioning dewatering system. A functioning dewatering operation must be in place prior to the removal of any embankment or underlying foundation materials, as required in para. 3.5.6 (Spec. 35 41 00) and the Contractor's approved excavation plan. (GAG) | L-40 Levee | QA Concurs Corrected | 26 Aug 2011 | |
| QA-00031 | Government has not received soil classification test results from Contractor for embankment fill and in-situ foundation material since tests were taken last week. Test reports are to be submitted within 24 hours of all physical tests (see SD-06 "Materials Testing" submittal on page 10, Spec 35 41 00) (GAG) | L-40 Levee | QA Concurs Corrected | 14 Sep 2011 | |
| QA-00032 | Key ditches for sub-sections 1AS, 1CS, and 1ES are located within the foundation, These ditches are not in compliance with Spec. 35 41 00 "Earthwork and Embankment Modification", paragraph 3.5, which states "Excavation shall consist of removal of material to the lines and grades shown on the drawings". Per paragraph 5.4 of your approved Surface and Groundwater Control Plan states "A key ditch will be excavated immediately south of each 500-foot section, which will act as a dewatering sump". Figure 5.3 of the same plan shows the key ditch separate from the proposed levee excavation. Reference Government Serial Letter C-0074. (GAG) | L-40 Levee | QA Concurs Corrected | 28 Sep 2011 | |
| QA-00033 | Silt fencing is down along the entrance road. (EHS) | Project Site | QA Concurs Corrected | 10 Nov 2011 | |
| QA-00034 | Stored materials TRF matting rolls are exposed to direct sun light (EHS) | Staging Area | QA Concurs Corrected | 10 Nov 2011 | |
| QA-00035 | To date no surveys of the fine drainage gravel placed along the north or south slopes of Section 1 have been submitted to the Government for review and approval. Survey submittal is required per Spec. 25 31 19 "Stone Protection" para. 1.3 submittals and para 1.4.3 "Placement Control Surveys". (GAG) | #89 Stone | QA Concurs Corrected | 22 Jan 2012 | |
| QA-00036 | The Soil Cement Test Section was placed on December 29, 2011 and January 5, 2012. Required test report submittals for Density, Compressive Strength, and Moisture Content have not | SC Test | QA Concurs Corrected | 23 Jan 2012 | |

Status: All | Range: All Locations | Sort: Item No



# Deficiency Items Issued by QA/QC

17 Sep 2012

**US Army Corps of Engineers**

114572 Site 1 Impoundment Phase 1
W912EP-10-C-0042 NA

Palm Beach County, FL

| Item Number | Description | Location | Status | Date Issued | Age (days) |
|---|---|---|---|---|---|
| | been submitted to the Government for review and approval. (GAG) | | | | |
| QA-00037 | KTR applied curing compound to soil cement after final lift was rolled out to compaction, some areas that had loose soil cement on the surface needs to be swept off before curing compound is applied. (EHS) | SC 1CS/1BS | QA Concurs Corrected | 01 Feb 2012 | |
| QA-00038 | Curing with water sprinkler system was not continuious for 7 days. Sprinkler was shut down over night and soil cement was not moist in several areas of the slab placed on Friday. KTR Did not fully comply with Spec section 31 35 30 , 3.10.1 Exposed Surfaces Temporarily exposed surfaces of soil-cement that will be in contact with succeeding soil-cement placement shall be kept continuously moist by moist curing or until placement of the subsequent layer. Curing of permanently exposed surfaces shall begin immediately after compaction and shall continue for at least 7 days. Soil-cement shall be cured and protected from premature drying, extremes in temperature, rapid temperature change, mechanical damage and exposure to rain or flowing water. The Contractor shall have all equipment needed for adequate curing and protection on hand and ready to install before actual placement begins. The Government shall approve the curing medium and method, or the combination of mediums and methods used. All soil-cement shall be protected from the damaging effects of rain for 8 hours and from flowing water for 7 days. (EHS) | SC 1BS | QA Concurs Corrected | 28 Jan 2012 | |
| QA-00039 | Initial Phase Meeting has not been held for Sub-surface Drilling for Instrumentation. Preparatory meeting held on site January 23, 2012. The wells for instrument Groups N1 and N2 have been drilled and casings installed and appear to be ready for placement of instrumentation. Per Spec. 01 45 04, para. 3.6.2 "Initial Phase is workmanship oriented and shall be accomplished at the beginning of physical work on a definable feature of work". (GAG) | L-40 Levee | QA Concurs Corrected | 06 Feb 2012 | |
| QA-00040 | Silt fencing is not being maintained throughout the project. Contractor is not compiling with Permit .Section 12. page 11. (EHS) | project site | QA Concurs Corrected | 17 Feb 2012 | |
| QA-00041 | Superintendent for CCT's vehicle (Black Toyota Pickup) observed passing a dump truck from behind heading west bound on top of the L-40 Levee. The dump truck came to a stop as a Euclid R-50 was approaching from the east. Corps QA rep observed CCT vehicle passed both trucks along the right side of the levee (approx. 4 to 1 slope) passing both dump truck and Euclid, in the vicinity of Station 124+00 +/-.  (GAG) | L-40 Levee | QA Concurs Corrected | 07 Mar 2012 | |
| QA-00042 | I inspected the TRM matting placed on top of the levee and the rolled up material is being exposed to sun light. The covers on the TRM needs to be re-packaged or tapped up. (EHS) | | QA Concurs Corrected | 15 Mar 2012 | |
| QA-00043 | As of COB Monday Apr. 2, 2012, QC reports are 9 calendar days deficient: Per SECTION 01 45 04 p 1.5.3 Quality Control a. Daily Contractor Quality Control (CQC) Reports. Electronically | | QA Concurs Corrected | 02 Apr 2012 | |



**US Army Corps
of Engineers**

# Deficiency Items Issued by QA/QC

17 Sep 2012

**114572 Site 1 Impoundment Phase 1**
**W912EP-10-C-0042  NA**

Palm Beach County, FL

| Item Number | Description | Location | Status | Date Issued | Age (days) |
|---|---|---|---|---|---|
| | submit reports to the Government within 24 hours after the date covered by the report. Also provide the Government a signed, printed copy of the daily CQC report. (SMM) | | | | |
| QA-00044 | Contractor began installing ACBM today, installing 4 units of matting. The matting was placed on top of the GEO tech fabric which was rolled up on top of the soil cement slab. The GEO fabric was exposed to the sun light for over 6 days, which doesn't comply with RFI response letter # 34. Which stated the fabric could be exposed for 5 days. (EHS) | 1AS Base | QA Concurs Corrected | 05 Apr 2012 | |
| QA-00045 | As of June 11, 2012 the Contractor is no longer providing 24-Hour security as required per Spec. 01 50 02, para. 3.7.There's been no evidence of security onsite over the past few days when Corps staff has arrived onsite. It's understood that the new security company is onsite for most of the evening and locks the gates and leaves the site at approximately 1:00 am. (GAG) | Project Site | Not Reported Corrected | 13 Jun 2012 | 96 |
| QA-00046 | QC reports are deficient by over 6 days: This is an ongoing issue.... <br><br> Per SECTION 01 45 04 p.1.1.5.3 Quality Control a. Daily Contractor Quality Control (CQC) Reports. Electronically submit reports to the Government within 24 hours after the date covered by the report. Also provide the Government a signed, printed copy of the daily CQC report. (SMM) | *Submittals | Not Reported Corrected | 08 Jun 2012 | 101 |
| QA-00047 | Prime has not properly covered exposed Turf Reinforced Mat (TRM) in Section 1CN. Attention to this problem has been made repeatedly to the Project Manager, QC Manager, and on site Supervisor. (RAF) | Section 1CN | Not Reported Corrected | 09 Jul 2012 | 70 |
| QA-00048 | Prime has not properly covered exposed geotextile fabric in Sections 2AS thru 2DS. Attention to this problem has been made repeatedly to the Project Manager, QC Manager, and on site Supervisor. (RAF) | Sections 2AS | Not Reported Corrected | 09 Jul 2012 | 70 |
| QC-00001 | The excavation near the dewatering pump within the Borrow Pit has not been pulled back to the required slope. The subcontractor was directed to correct this deficiency. <br><br> The sheer slope does not meet the minimum requirements of the Specs. In addition, it is a safety concern in particular because of the need to service the hydraulic pump in this area. | Borrow Pit | QA Concurs Corrected | 17 Feb 2011 | |
| QC-00002 | Current sheetpile driving operations have the turbidity screen surrounding the pile driving template to ensure that turbidity does not escape the work area. As per the contractor's EPP, it was noted that turbidity screen would surround the barge. The subcontractor has been notified and intends to surround the barge with turbidity screen as well. <br><br> A revision to the EPP will be prepared to address the most effective and efficient means of controlling turbidity now that operations have begun. <br><br> To date turbidity readings as a result of sheetpile driving operations have been zero. | L-40 Canal | QA Concurs Corrected | 17 Feb 2011 | |
| QC-00003 | CMT deckhand was observed climbing the leads for the diesel hammer without proper fall protection. Subcontractor was | Barge | QA Concurs Corrected | 17 Mar 2011 | |

Status: All | Range: All Locations | Sort: Item No



# Deficiency Items Issued by QA/QC

17 Sep 2012

**114572 Site 1 Impoundment Phase 1**
**W912EP-10-C-0042  NA**

Palm Beach County, FL.

**US Army Corps**
**of Engineers**

| Item Number | Description | Location | Status | Date Issued | Age (days) |
|---|---|---|---|---|---|
| | directed to cease activity unless fall protection was used.  CMT ceased activities. | | | | |
| QC-00004 | Missing access hatch to engine room confined space entry sticker on tug. | Barge Tug | QA Concurs Corrected | 10 Mar 2011 | |
| QC-00005 | Due to excessive rain fall, the water level in the dewatering storage area reached extremely high levels. LCI directed CCT to either stop dewaterng or repair the berm around the first dewatering storage area and reroute effluent into this unused basin.  CCT connected the two basins immediately for storage relief. | Borrow Pit | QA Concurs Corrected | 01 Apr 2011 | |
| QC-00006 | Barge pile driver broke hydraulic line.  Fluids contained and it was environmentally safe fluid, vegetable oil. | L-40 Canal | QA Concurs Corrected | 11 Apr 2011 | |
| QC-00007 | Callaway Marine Technologies, Inc. crane operator, Rick Varney was not feeling well and left the jobsite.  Charles Callaway allowed another certified operator to work on the barge prior to getting approval from LCI SSHO or USACE.  In addition, LCI was not notified of the change in crane operator.  Callaway Marine provided a copy of the substitute operator's certification.  Callaway Marine will have someone approved as backup in accordance with plans and specs | Crane Barge | QA Concurs Corrected | 03 May 2011 | |
| QC-00008 | CCT had people standing in a loader bucket trying to install a screen in a screen plant.  Personnel not briefed on safety, and proceeded to go on site without stopping at the office and signing in.  Corrective Action: Plant was removed until it was inspected, completed and personnel was briefed and safety certified | Project Site | QA Concurs Corrected | 17 Jun 2011 | |
| QC-00009 | CCT's mechanic was working on an excavator's long stick atop the boom without proper PPE. The mechanic was removed from the equipment and his supervisor was notified as well as the owner of the company.  A harness was provided and the mechanic was trained on the proper wear.  It was clearly stated that fall protection is required. | | QA Concurs Corrected | 08 Dec 2011 | |
| QC-00010 | 31 35 30 3.11 Joints/Lifts-Subcontractor CCT did not have wire bristle power broom on site per approved soil cement installation plan | SC Test | QA Concurs Corrected | 13 Dec 2011 | |
| QC-00011 | 31 35 30 1.5.11  Water Curing Equipment- Subcontractor CCT failed to provide fine mist sprayer on water truck or 1000 gallon 24 hour tank with fine mist sprayer | SC Test | QA Concurs Corrected | 13 Dec 2011 | |
| QC-00012 | 31 35 30 3.7.2 Transporting-Subcontractor CCT did not have protective covers for use in unfavorable weather | SC Test | QA Concurs Corrected | 13 Dec 2011 | |
| QC-00013 | 31 35 30 3.9 Compaction-Subcontractor CCT did not have acceptable 10 ft. straight edge available | SC Test | QA Concurs Corrected | 13 Dec 2011 | |
| QC-00014 | 31 35 30 3.10.1 Exposed Surfaces-Subcontractor CCTfailed to keep temporarily exposed surfaces of soil cement continuously moist prior to succeeding soil cement placement | SC Test | QA Concurs Corrected | 13 Dec 2011 | |
| QC-00015 | 31 35 30 3.8 Spreading- Subcontractor CCTfailed to place correct thickness of lifts to within specification due to | SC Test | QA Concurs Corrected | 13 Dec 2011 | |



# Deficiency Items Issued by QA/QC

17 Sep 2012

**US Army Corps of Engineers**

**114572 Site 1 Impoundment Phase 1**
**W912EP-10-C-0042  NA**

Palm Beach County, FL

| Item Number | Description | Location | Status | Date Issued | Age (days) |
|---|---|---|---|---|---|
| | malfunction of lazer guidance system on spreading equipment. | | | | |
| QC-00016 | 31 35 30 1.4.5 Flat Plate Soil Cement-Subcontractor CCT failed to properly install soil cement to specified lift thickness. | SC Test | QA Concurs Corrected | 13 Dec 2011 | |
| QC-00017 | 31 35 30 1.3 Equipment and Plans-Subcontractor CCT failed to utilize approved compaction equipment (Sakai 400D roller) due to malfunction and substituted unapproved equipment. | SC Test | QA Concurs Corrected | 13 Dec 2011 | |
| QC-00018 | 31 35 30 1.5.10 Compaction Equipment-Subcontractor CCT failed to utilize approved light, walk behind compactor in areas in accessible to larger equipment | SC Test | QA Concurs Corrected | 13 Dec 2011 | |
| QC-00019 | 31 35 30 3.9 Compaction-Subcontractor CCT failed to adequately secure forms to prevent movement more than 1/4 inch. | SC Test | QA Concurs Corrected | 13 Dec 2011 | |
| QC-00020 | Subcontractor CCT failed to provide proper fuel containment for 6" pump on Batch Plant access road North of Batch Plant | BPlant Haul | QA Concurs Corrected | 13 Dec 2011 | |
| QC-00021 | Subcontractor CCT failed to properly install 6"pump on Batch Plant haul road to protect from flooding | BPlant Haul | QA Concurs Corrected | 13 Dec 2011 | |
| QC-00022 | Subcontractor Big Tree failed to properly protect stored TRM materials from sunlight (uv) per specs | Storage Yard | QA Concurs Corrected | 13 Dec 2011 | |
| QC-00023 | Subcontractor failed to process borrow material properly in order to produce embankment fill meeting Particle size specification. Area of stockpile ¾ delineated by the following points 1)  STA 128+79  4896 ft. right of levee baseline elev.17.553 2)  STA 127+88  4937 ft. right of levee baseline elev. 13.3 N 733918 E 898974 3)  STA 128+06  5005 ft. right of levee baseline elev. 21.7 N 733850 E 898993 4)  STA 128+81  4949 ft. right of levee baseline elev. 22.72 N733906 E 899068 | Stockpile3/4 | QA Concurs Corrected | 21 Dec 2011 | |
| QC-00024 | Soil Cement Test Section-STA 137+60 to STA 138+20 <br><br> b. Compaction equipment shall not cause cracking or other visible defects in the finished surface or within the compacted lift <br><br> Surface stress cracks from compaction equipment at the following locations: STA 138+85 to STA 137+90; Offset from Baseline-18.0 to 26.0 ft. Right STA 138+03 to STA 138+18; Offset from Baseline-7.0 to 46.0 ft. Right | SC Test | Not Reported Corrected | 16 Jan 2012 | 245 |
| QC-00025 | Soil Cement Test Section-STA 137+60 to STA 138+20 3.5 The surface shall be tested for trueness to a tolerance of +/- 0.1 feet over 10ft. 3.5 Cross section thickness tolerance -0.0 to +1.0 inch 3.5 Depressions shall be immediately filled with freshly mixed soil cement, struck off, compacted and refinished <br><br> Several dips/overbuilds creating more than 0.1 ft. in 10ft. variance and thickness deficiency less (less than 24", Over 25" ) in STA 137+95 to STA 138+20 Offset from base line 55ft. to 50.8ft. (south edge) <br><br> Joint/Depression repair-soil cement added for repair did not bond to underlying soil cement. Edges raveling, hollow between layers at STA 137+61 to STA 138+20  36. offset to 8ft.offser right | SC Test | Not Reported Corrected | 16 Jan 2012 | 245 |



**US Army Corps of Engineers**

## Deficiency Items Issued by QA/QC

17 Sep 2012

**114572 Site 1 Impoundment Phase 1**
W912EP-10-C-0042  NA

Palm Beach County, FL

| | Item Number | Description | Location | Status | Date Issued | Age (days) |
|---|---|---|---|---|---|---|
| ✓ | QC-00026 | 3.11  Construction Joints shall be made to ensure continuity in smoothness and grade between old and next sections<br><br>Edges of soil cement along forms not graded level to create smooth transition to next section in STA 137+60; 7ft. offset left to 61ft. offset right and STA 138+20, 7ft. left to 6ft. offset right | SC Test | Not Reported Corrected | 16 Jan 2012 | 245 |
| ✓ | QC-00027 | Soil Cement Test Section STA 137+00 to STA 137+60<br>3.5 The surface shall be tested for trueness to a tolerance of +/- 0.1 feet over 10ft.<br>3.5 Cross section thickness tolerance -0.0 to +1.0 inch<br>3.5 Depressions shall be immediately filled with freshly mixed soil cement, struck off, compacted and refinished<br><br>Depression repair hollow-did not adhere to underlying surface in STA 137+44 to STA 137+60 2.0 to 7.0ft. offset right<br><br>Surface tolerance greater than 0.1 ft. in 10 ft. and thickness outside tolerance of 24" to 25" in STA 137+11 offset 57.8ft. right elevation 11.6<br><br>Surface tolerance greater than 0.1 ft in 10 ft. and thickness outside tolerance of 24" to 25" in STA 134+40 to STA137+60 offset 55ft. to 61ft. right | SC Test | Not Reported Corrected | 16 Jan 2012 | 245 |
| ✓ | QC-00028 | 3.11  Construction Joints shall be made to ensure continuity in smoothness and grade between old and next sections<br><br>Joint along form not finished to allow for smooth transition to next section in both<br>STA 137+60 and STA 137+00 - 70ft. offset left to 61ft. right<br><br>Depression repairs raveling and not properly finished for acceptable surface | SC Test | Not Reported Corrected | 16 Jan 2012 | 245 |
| | QC-00029 | 3.2 Stockpiled material, Contractor shall be solely responsible for monitoring the uniformity of material<br><br>Surface defects in soil cement due to recemented clumps of screened aggregated caused by extensive storage and improper remixing of stockpiled material in STA137+26-12.2ft. offset right elevation 23.0 | SC Test | QA Concurs Corrected | 16 Jan 2012 | |
| | QC-00030 | 2.2.1 PDEA-The maximum spacing is shown on the drawings<br>1.2 Submittals<br>SD-01 TRM Installation Plan-Shows seam overlap pinning/anchoring spacing and layout<br>SD-02 Shop Drawings- Installation details-show installation details, seam overlap, pinning/anchoring Spacing<br><br>Subcontractor failed to install TRM per specs and drawings (roll orientation) and approved submittals<br>Subcontractor failed to install PDEA per specs and drawings (PDEA spacing) and approved submittals | TRM 1CN | QA Concurs Corrected | 18 Jan 2012 | |
| | QC-00031 | CCT was issued a deficiency on April 5, 2012 as follows:<br>Subcontractor failed to protect areas of any unfinished surface or joint or locations where new soil cement or grout will be placed, from application of curing compound | Soil Cement | QA Concurs Corrected | 18 Apr 2012 | |

Status: All

Range: All Locations

Sort: Item No.



# Deficiency Items Issued by QA/QC

17 Sep 2012

114572 Site 1 Impoundment Phase 1
W912EP-10-C-0042 NA

Palm Beach County, FL

US Army Corps
of Engineers

| Item Number | Description | Location | Status | Date Issued | Age (days) |
|---|---|---|---|---|---|
| | Subcontractor failed to remove improperly applied curing compound from those areas to receive grout. | | | | |
| QC-00032 | EPP was issued a deficiency on April 12, 2012. Subcontractor installed aluminum (instead of copper) crimped grommets between 8ft. ACB mats along interface (within 1 block width) of soil cement where grout will be installed, as required in the approved submittals. | *EPP | QA Concurs Corrected | 12 Apr 2012 | |

**AMENDMENT NO. 2**
**TO**
**TENDER AND RELEASE AGREEMENT**
**REGARDING Contract No. W912EP-10-C-0042, 114572 Site 1 Impoundment Phase 1,**
**Palm Beach County, Florida**

THIS Amendment No. 2 is made and entered into this 20th day of March, 2013, by and

between the United States of America, Department of the Army, Jacksonville District, Corps of

Engineers ("USACE") represented by the Contracting Officer, and Hanover Insurance Company

("Surety"), represented by its Vice President.

    1.      On December 31, 2012, the USACE and the Surety entered into a Tender and

Release Agreement ("Agreement") providing for the tender of a new contractor to complete all

the required work that remains to be performed under the now terminated Contract No. W912EP-

10-C-0042 ("Prime Contract"), for all labor, services and materials to construct Project No.

114572 Site 1 Impoundment Phase 1, Palm Beach County, Florida ("Project") in accordance with

the terms and provisions of the Prime Contract, including all documents forming a part of the

Prime Contract.

    2.      Surety executed the Agreement on December 31, 2012, but was not able to

deliver it to the USACE until January 2, 2013.

    3.      On January 4, 2013 the Parties executed Amendment 1 to the Agreement.

    4.      Article 7 of the Agreement states in part,

<u>Bonds from Completion Contractor</u>.  The Completion Contractor shall provide payment
and performance bonds as required by the Contract Documents, naming both USACE and
Surety as obligees, in the amount of the Completion Price, issued by Travelers Casualty
and Surety Company of America.  USACE will not be responsible for any additional
payment for these bonds. During the progress of the completion work, USACE shall
hereafter conduct business directly with the Completion Contractor as if it is the prime
contractor under the Prime Contract and future payments under this contract shall be
made directly to:

Munilla Construction Management, LLC d/b/a MCM
6201 SW 70 Street, 2nd Floor
Miami, FL 33143

5.      Article 10 of the Agreement states in part,

    <u>USACE's Release of Surety</u>.    In exchange for this Agreement and the payment referenced in paragraph 6 above, USACE hereby RELEASES, ACQUITS and FOREVER DISCHARGES Surety and its officers, directors, shareholders, employees, parent companies, sibling companies, affiliated companies, reinsurers, successors and assigns of and from any and all claims, rights, demands and/or causes of action of whatsoever kind or nature that USACE has or may ever claim to have, now or in the future, against Surety in any way relating to the Project, the design or construction of the Project, and/or by reason of its Performance Bond furnished to USACE; provided however, that it is expressly understood and agreed by and between the Parties that the foregoing Release is qualified and limited by the following exceptions:

        C. USACE further expressly agrees that: (1) it will at no time call upon or attempt to call upon Surety with regard to Surety's performance bond, as reduced in its penal amount, in relation to the Project, unless: (a) Completion Contractor defaults upon its Completion Contract and fails to cure any such default, causing the Completion Contract to be terminated; and (b) as a result of such default, USACE calls upon the Completion Contractor's performance bond surety and the entire penal limits of Completion Contractor's performance bond are exhausted and paid to the USACE; (2) Surety shall only have continuing potential exposure upon its performance bond, as reduced in its penal amount, for any excess liability, if any, resulting from the aforementioned events; and (3) in the event of any such default of Completion Contractor, USACE shall provide prompt written notice of such event to Surety.

6.      Article 16(k) of the Agreement states, "This Agreement shall not in any way be amended or modified without the written consent of both Parties."

7.      The Parties agree to amend the first sentence of Article 7, noted above, to read as follows:

    The Completion Contractor shall provide payment and performance bonds as required by the Contract Documents, naming USACE as obligee, in the amount of the Completion Price, issued by Travelers Casualty and Surety Company of America.

8.      The Parties agree to delete entirely from the Agreement Article 10 paragraph C, noted above.

9.   The Parties agree to re-number Article 10 paragraph D as paragraph C.

10.   The Parties agree to re-number Article 10 paragraph E as paragraph D.

**THE SIGNATORIES TO THIS AGREEMENT ACKNOWLEDGE THAT THEY HAVE READ THE FOREGOING AGREEMENT, FULLY UNDERSTAND ITS TERMS AND CONDITIONS, AND AGREE TO BE BOUND BY ALL OF ITS TERMS AND CONDITIONS.**

**UNITED STATES OF AMERICA, ACTING BY AND THROUGH THE DEPARTMENT OF THE ARMY JACKSONVILLE DISTRICT, CORPS OF ENGINEERS**

**HANOVER INSURANCE COMPANY**

By: _____

Name: Frances C. Jones

Title: Contracting Officer

By: _____

Name: _Toby Pilcher_____

Title: _Sr Claims Attorney  Surety___

3

-B-



The Hanover Insurance Company | 440 Lincoln Street, Worcester, MA 01653
Citizens Insurance Company of America | 645 West Grand River Avenue, Howell, MI 48843
Massachusetts Bay Insurance Company | 440 Lincoln Street, Worcester, MA 01653

**Agreement of Indemnity**

WHEREAS, at the request of the undersigned, for themselves, their heirs, executors, administrators, successors and assigns (hereafter referred to as "Indemnitors"), and upon the express understanding that this Agreement be executed, The Hanover Insurance Company, Massachusetts Bay Insurance Company and/or Citizens Insurance Company of America and their affiliates, successors, assigns and any subsidiary companies (hereafter individually and collectively referred to as "Surety") has executed, or may in its discretion hereafter execute certain surety contracts, undertakings, and/or other instruments of guarantee or indemnity, and any continuation, extension, amendment, alteration, renewal or substitution thereof (hereafter collectively referred to as "bond" or "bonds") on behalf of the Indemnitors or any one or more of the Indemnitors, in which bonds the Indemnitors hereby affirm they have a substantial, material and beneficial interest.

NOW, THEREFORE, in consideration of the premises, and of the execution or continuance of such bonds, the Indemnitors, jointly and severally, hereby covenant and agree in favor of the Surety as follows:

1. The Indemnitors will promptly pay or cause to be paid in cash to the Surety in advance, or if not in advance, in such manner as may be agreed upon, all premiums and charges of the Surety for such bonds at the rates and times specified by the Surety, and will continue to pay the same where such bonds are continued until the Indemnitors shall serve evidence satisfactory to the Surety of its discharge or release from such bonds and all liability by reason thereof.

2. The Indemnitors shall exonerate, indemnify, and save harmless the Surety from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Surety may pay or incur, including, but not limited to, loss, interest, court costs and consultant and attorney fees:

   (a) by having executed or procured the execution of the bonds; or

   (b) in making an independent investigation of any claim, demand, or suit; or

   (c) in defending any suit, action, mediation, arbitration or any other proceeding to obtain release from liability whether the Surety, in its sole discretion, elects to employ its own attorney or permits or requires Indemnitors to defend the Surety; or

   (d) in enforcing any of the covenants, terms and conditions of this Agreement.

3. Payment shall be made to the Surety by the Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. Such payment to the Surety shall be: a) if the amount asserted as a claim, demand or suit is an ascertainable or liquidated amount, the amount of the claim, demand, or suit asserted against the bond or bonds by any claimant or obligee, plus the amount the Surety deems sufficient, in its sole discretion, to indemnify and hold it harmless from and against any loss, cost, interest, and expense necessary to defend, investigate, or adjust the claim, demand, or suit; or b) if the amount asserted as a claim, demand, or suit is an unascertainable or unliquidated amount, the amount the Surety deems sufficient, in its sole discretion, to indemnify and hold it harmless from and against any loss, cost, interest, and expense necessary to defend, investigate, or adjust the claim, demand, or suit. The Surety shall have the right to hold such funds as collateral (without any obligation to earn interest on the collateral for the Indemnitors) until the Indemnitors serve evidence satisfactory to the Surety of its discharge from all bonds and all liability by reason thereof, and to use such funds or any part thereof, at any time, in payment or settlement of any judgment, claim, liability, loss, damage, fees, or any other expense.

The Surety shall have the exclusive right to adjust, settle, or compromise any claim, demand, suit or any other proceeding arising out of any bond against the Surety and/or the Indemnitors, take whatever action it deems appropriate in response thereto, and its determination of whether to defend or settle the same shall be binding and conclusive upon the Indemnitors. In the event of any payment or disbursement by the Surety, the Indemnitors agree to immediately reimburse the Surety for any and all payments and disbursements made (including, but not limited to, interest from the date of the Surety's payments at the maximum rate allowable) under the Surety's belief that liability for the payments existed or that payment was necessary or expedient, whether or not such liability, necessity or expediency existed. Vouchers or other evidence of payment by the Surety shall be conclusive evidence of the fact and amount of such liability, necessity, or expediency and of the Indemnitors' liability to the Surety therefor.

4. With respect to each bond executed by the Surety in connection with a contract, the Surety is hereby authorized, in its sole discretion, to make or guarantee advances or loans for the purpose of the contract without the necessity of seeing to the application thereof, and the Indemnitors agree both that all such loans and advances, unless repaid with legal interest by the Indemnitors to the Surety when due, shall be conclusively presumed to be an indemnity obligation of the Indemnitors to the Surety, and that the Surety shall have the absolute right to cease making or guaranteeing advances or loans at any time and without notice to the Indemnitors.

5. With respect to each bond executed by the Surety in connection with a contract, the Indemnitors hereby assign, transfer, convey and set over to the Surety:

   (a) all right, title and interest of the Indemnitors in and to all tools, plants, equipment and materials of every nature and description that may now or hereafter be upon the site of the contracted work or elsewhere for the purpose of the contract; and

   (b) all right, title and interest of the Indemnitors in and to the contract including all rights in and to all subcontracts or purchase orders let or to be let in connection therewith; and

   (c) all monies retained, due, or due in the future on account of any contract, whether bonded or unbonded, in which any or all the Indemnitors have an interest; and

   (d) all right, title and interest, or use of any license, patent, trademark or copyright held by Indemnitors in connection with contracted work or required for the completion of any contract.

The assignments shall be effective as of the execution dates of the bonds, but only enforceable upon the occurrence of one or more of the events described in Paragraph 6(a-f).

141-0744 (9/07)

6. In the event the Indemnitors, or any one or more of them, shall: (a) whether actually or allegedly (as declared by the obligee or owner), delay, default, abandon, forfeit or breach any contract secured by a bond, or (b) fail, neglect, or refuse in any manner to timely pay for any labor or material used in the prosecution of any contract secured by a bond, or (c) change its character, identity, control, beneficial ownership, or existence, or (d) fail to perform, or comply with any of the terms, covenants, or obligations of this Agreement, including, but not limited to, prompt payment of any amount due under this Agreement, or (e) make an assignment for the benefit of creditors, or have any proceedings instituted against them, or any one or more of them, alleging insolvency or involving the appointment of a receiver or trustee whether such Indemnitor(s) is/are insolvent or not, or (f) have proceedings instituted against any of the Indemnitors which have the effect of depriving any of them of the use of any part of the equipment used in connection with any contract work so as to hinder, delay, or impede the normal and satisfactory progress of the work, then the Surety, in its sole discretion, shall have the right, but not the obligation, to take possession of the work under the contract and any other contract, in connection with which the Surety has issued a bond or bond(s) and, at the expense of the Indemnitors, to complete, to arrange for completion, or to agree to the re-letting or completion by the obligee or owner of the contract work.

7. The Indemnitors covenant and agree that all funds due or to become due under any contract secured by a bond, whether in the possession of any Indemnitor or others, are held in trust for the benefit and payment of all obligations incurred in the completion of said contract for which the Surety would be obligated under the bond. The trust shall inure for the benefit of the Surety for any liability or loss under any bond, and this Agreement shall constitute notice of such trust.

8. The Surety, or its designated agents, shall have full and free access to the Indemnitors' books and records at any and all reasonable times until the liability of the Surety under any bond is completely terminated and the claims of the Surety against any Indemnitor are fully satisfied.

9. The Indemnitors irrevocably appoint the Surety as their attorney-in-fact with the power, authority and right to exercise all of the rights of the Indemnitors, or any of them, which are assigned, transferred and set over to the Surety under this Agreement, or otherwise, including, but not limited to: (a) the right to take possession of all funds due or to become due under any contract and to endorse, in the name of the Indemnitors, or any one or more of them, any check, draft, warrant, or other instruments made or issued in payment of such funds, and to disburse the proceeds thereof for the purposes of the trust provided in Paragraph 7, or in such manner which exonerates, holds harmless, and indemnifies the Surety, (b) the right to execute any other agreements or documents which the Surety, in its sole discretion, deems necessary to vest it in the title, property, and/or funds assigned by the Agreement, or otherwise, and (c) the right in its name or in the name of the Indemnitor(s), but not the obligation, to pursue, prosecute, compromise, release, or otherwise resolve any of the claims, causes of action or other rights assigned, upon such terms as the Surety, in its sole discretion, shall deem appropriate.

10. This Agreement shall constitute a Security Agreement of the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect, and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement, or under law, or in equity. A copy of this repro-duction of this Agreement may be filed as a Financing Statement.

11. The Surety may decline to execute any bond (including those for which any application was submitted, any bid or proposal bond was issued by the Surety, or otherwise) without impairing the validity of this Agreement, and the Indemnitors hereby waive any and all claims against the Surety due to its refusal or failure to so execute.

12. The Surety may reduce the amount of the Indemnitors' liability to the Surety under this Agreement by applying as a set off any monies due the Indemnitors by the Surety as a result of any claim any of the Indemnitors, or any entity bonded or insured by the Surety, may have against the Surety.

13. The Indemnitors waive, to the extent permitted by law, so far as their respective obligations under this Agreement are concerned, all rights to claim any property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any state, territory, or possession of the United States.

14. The Indemnitors agree to keep themselves fully informed as to the business and financial affairs of each of the other Indemnitors so that the Indemnitors are aware of the risks and hazards of continuing as Indemnitors. The Indemnitors waive notice from the Surety of any act, fact, or information coming to the notice or knowledge of the Surety concerning its rights or liabilities under any bonds executed by the Surety on behalf of Indemnitors, or any one or more of them, or the rights or liabilities of the Indemnitors, whether the Surety has such knowledge or notice before or after the execution of this Agreement.

15. The Surety, in its sole discretion, may agree or refuse to agree to any alteration, amendment, change, modification, limitation, or extension of any bond, and any renewal or other obligation in place or in lieu thereof, or of any contract (or any plans and specifications relating thereto) secured by any bond, and in any such case the Indemnitors shall be liable to the Surety as fully and to the same extent on account of any such altered, amended, changed, modified, limited or extended bond or renewal or substitution thereof, or contract, whenever and as often as made, even though such action does or might substantially increase the liability of the Indemnitors.

16. In the event the Surety procures the execution of the bonds by other sureties, or executes the bonds with co-sureties, or reinsures any portion of said bonds with reinsuring sureties, then all the terms and conditions of this Agreement shall inure for the benefit of such other sureties, co-sureties and reinsuring sureties.

17. No remedy conferred upon or reserved to the Surety by this Agreement is intended to be exclusive of any other remedy or remedies, and each and every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Agreement to the Surety shall be concurrent and may be pursued separately, successively or together against any Indemnitor, or any one or more of them; and every right, power and remedy given by this Agreement to the Surety may be exercised from time to time as often as may be deemed expedient by the Surety in its sole discretion.

18. The liability of the Indemnitors under this Agreement shall not be affected by the failure of the Indemnitors to sign any bond, nor by the failure of any Indemnitor to receive notice of the execution of any bond, nor by any claim that any other indemnity or security was to be obtained, nor by the release of any indemnity, nor by the return or exchange of any collateral. If any Indemnitor to this Agreement is deemed for any reason (including, but not limited to, any defect in the execution of this Agreement by any Indemnitor) not bound thereby, the Agreement shall still be binding upon each and every other Indemnitor.

19. If any provision or provisions of this Agreement are deemed void or unenforceable under any jurisdiction governing its construction, this Agreement shall not be deemed void or unenforceable thereby, but shall continue in effect and be enforced as though the void or unenforceable provisions are omitted.

20. The Indemnitors waive and subordinate all rights of indemnity, subrogation and contribution each against the other until all obligations to the Surety have been first satisfied in full.

21. This Agreement may be terminated as to any Indemnitor upon 20 days' written notice sent by registered or certified mail to the Surety at its principal bond office, The Hanover Insurance Company, Attention: Bond Department, 440 Lincoln Street, Worcester, Massachusetts, 01653, but any such notice of termination shall not operate to modify, bar, or discharge the Indemnitors as to the bonds that may have been executed prior to such termination.

22. This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed to form a part hereof.

23. This Agreement applies to bonds written by the Surety at the request of or on behalf of the Indemnitors and any of their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, divisions or affiliates, partnerships, joint ventures or co-ventures in which any of the Indemnitors, their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, divisions or affiliates have an interest or participation, whether open or silent; jointly, severally, or in any combination with each other; now in existence or which may hereafter be created or acquired.

IN WITNESS WHEREOF, the Indemnitors who are individuals have hereunder set their hands and seals, and the Indemnitors which are partnerships, corporations or unincorporated associations have caused the Agreement to be duly executed by their authorized representatives on this __14th__ day of __April__, in the year of __2009__.

---

## INDIVIDUAL ACKNOWLEDGMENT

Address:                                                     Indemnitor:

__39331 Washington Loop Road__                               __Cabot L. Dunn Jr.__

__Punta Gorda, FL 33982__                                    By: _____

SS# or Fed. Tax ID #: __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__                        Date of Birth (if individual): __3/13/63__

---

STATE OF __FL__

COUNTY OF __Lee__ _____ SS

On this __14th__ day of __April__, in the year __2009__, before me personally came __Cabot L. Dunn Jr.__ to me known and known to me to be the individual who executed the foregoing instrument and who duly acknowledged to me that ____ he executed the same.

> JEANNE M. TUYA
> Comm# DD0749267
> Expires 2/23/2012
> Florida Notary Assn., Inc

Notary Public: __Jeanne M. Tuya__

Address and telephone no.: __480 Ortega Blvd__
__Lehigh Acres FL 33973   239-303-5853__

Notary registration no.: __DD0749247__

Commission expires: __02-23-2012__

---

Instructions: If the Indemnitor is an individual, type full name, sign on next line, and fill in address, SS #, and DOB. If the Indemnitor is a corporation, type full name, impress with seal, sign on next line along with capacity of officer signing, and fill in corporate address and Fed. Tax ID #. A corporate resolution authorizing the officer to execute this Agreement should also be attached. If partnership, type firm name, with signature of the partner signing on behalf, and fill in firm address and Fed. Tax ID #. Each partner should sign as an Indemnitor.

This instrument should be dated, each signature block filled out completely, and all signatures must be properly acknowledged in the presence of a Notary Public. Attach additional signature blocks and acknowledgement forms if necessary.

## INDIVIDUAL ACKNOWLEDGMENT

Address:                                                    Indemnitor:

39331 Washington Loop Road                                 Regina L. Dunn

Punta Gorda, FL 33982                                      By: _Regina L Dunn_

SS# or Fed. Tax ID #: 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                          Date of Birth (if individual): 9/15/69

STATE OF ___FL___

COUNTY OF ___Lee___                          SS

On this __14th__ day of __April__, in the year __2009__, before me personally
came _Regina L. Dunn_
to me known and known to me to be the individual who executed the foregoing instrument and who duly acknowledged to me
that _ she _ executed the same.

JEANNE M. TUYA
Comm# DD0749267
Expires 2/23/2012
Florida Notary Assn., Inc

Notary Public: _Jeanne M Tuya_
Address and telephone no.: 4810 Crotview Blvd
Lehigh Acres FL 33973 239.303.5853
Notary registration no.: DD0749267
Commission expires: 02-23-2012

## INDIVIDUAL ACKNOWLEDGMENT

Address:                                                    Indemnitor:

18361 Telegraph Creek Lane                                 Michael T. Dunn

Alva, FL 33920                                             By: _____

SS# or Fed. Tax ID #: 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                          Date of Birth (if individual): 4/10/65

STATE OF ___FL___

COUNTY OF ___Lee___                          SS

On this __14th__ day of __April__, in the year __2009__, before me personally
came _Michael T. Dunn_
to me known and known to me to be the individual who executed the foregoing instrument and who duly acknowledged to me
that ___ he executed the same.

JEANNE M. TUYA
Comm# DD0749267
Expires 2/23/2012
Florida Notary Assn., Inc

Notary Public: _Jeanne M Tuya_
Address and telephone no.: 4810 Crotview Blvd
Lehigh Acres FL 33973 239-303-5853
Notary registration no.: DD0749267
Commission expires: 02-23-2012

**Instructions:** If the Indemnitor is an individual, type full name, sign on next line, and fill in address, SS #, and DOB. If the Indemnitor is a corporation, type full name, impress with seal, sign on next line along with capacity of officer signing, and fill in corporate address and Fed. Tax ID #. A corporate resolution authorizing the officer to execute this Agreement should also be attached. If partnership, type firm name, with signature of the partner signing on behalf, and fill in firm address and Fed. Tax ID #. Each partner should sign as an Indemnitor.
     This instrument should be dated, each signature block filled out completely, and all signatures must be properly acknowledged in the presence of a Notary Public. Attach additional signature blocks and acknowledgement forms if necessary.

## INDIVIDUAL ACKNOWLEDGMENT

Address:
262 Emerson Dr NW

Palm Bay, FL 32907

SS# or Fed Tax ID #: 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

Indemnitor:
Steven L. Chandler

By: _(signature)_

Date of Birth (if individual): 10/27/74

STATE OF FL

COUNTY OF Lee                    SS

On this 14th day of April, in the year 2009, before me personally came Steven L. Chandler

to me known and known to me to be the individual who executed the foregoing instrument and who duly acknowledged to me that ..... he executed the same.

```
JEANNE M. TUYA
Comm# DD0749267
Expires 2/23/2012
Florida Notary Assn., Inc
```

Notary Public: _(signature)_ Jeanne M Tuya

Address and telephone no.: 4810 Golfview Blvd
Lehigh Acres FL 33973   239-303-5853

Notary registration no.: DD 0749267

Commission expires: 02-23-2012

## INDIVIDUAL ACKNOWLEDGMENT

Address:
262 Emerson Dr NW

Palm Bay, FL 32907

SS# or Fed Tax ID #: 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

Indemnitor:
Amanda L. Chandler

By: _(signature)_ Amanda L Chandler

Date of Birth (if individual): 1/8/75

STATE OF Fl

COUNTY OF Lee                    SS

On this 14th day of April, in the year 2009, before me personally came Amanda L. Chandler

to me known and known to me to be the individual who executed the foregoing instrument and who duly acknowledged to me that S... he executed the same.

```
JEANNE M. TUYA
Comm# DD0749267
Expires 2/23/2012
Florida Notary Assn., Inc
```

Notary Public: _(signature)_ Jeanne M Tuya

Address and telephone no.: 4810 Golfview Blvd
Lehigh Acres FL 33973   239-303-5853

Notary registration no.: DD0749267

Commission expires: 02-23-2012

Instructions: If the Indemnitor is an individual, type full name, sign on next line, and fill in address, SS #, and DOB. If the Indemnitor is a corporation, type full name, impress with seal, sign on next line along with capacity of officer signing, and fill in corporate address and Fed. Tax ID #. A corporate resolution authorizing the officer to execute this Agreement should also be attached. If partnership, type firm name, with signature of the partner signing on behalf, and fill in firm address and Fed. Tax ID #. Each partner should sign as an Indemnitor.
This instrument should be dated, each signature block filled out completely, and all signatures must be properly acknowledged in the presence of a Notary Public. Attach additional signature blocks and acknowledgement forms if necessary.

## INDIVIDUAL ACKNOWLEDGMENT

Address:
854 Custer Street NW

Palm Bay, FL 32907

SS# or Fed. Tax ID #: 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

Indemnitor:
Jason C.W. Chandler

By: _[signature]_

Date of Birth (if individual):  7/17/71

STATE OF ......... FL

COUNTY OF .. Lee ............................................. SS

On this  14th  day of ......... April ........................., in the year 2009 ......................, before me personally came .. Jason C.W. Chandler ....
to me known and known to me to be the individual who executed the foregoing instrument and who duly acknowledged to me that ..... he executed the same.

> JEANNE M. TUYA
> Comm# DD0749267
> Expires 2/23/2012
> Florida Notary Assn., Inc

Notary Public: _Jeanne M Tuya_

Address and telephone no: 4810 Golfview Blvd
Lehigh Acres FL 33973  239-303-5853

Notary registration no: DD0749267

Commission expires: 02-23-2012

## INDIVIDUAL ACKNOWLEDGMENT

Address:
854 Custer Street NW

Palm Bay, FL 32907

SS# or Fed. Tax ID #: 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

Indemnitor:
Debrina L. Chandler

By: _Debrina L Chandler_

Date of Birth (if individual):  12/24/76

STATE OF ......... FL

COUNTY OF .. Lee ............................................. SS

On this  14th  day of ......... April ........................., in the year 2009 ......................, before me personally came .. Debrina L. Chandler ....
to me known and known to me to be the individual who executed the foregoing instrument and who duly acknowledged to me that ..... he executed the same.

> JEANNE M. TUYA
> Comm# DD0749267
> Expires 2/23/2012
> Florida Notary Assn., Inc

Notary Public: _Jeanne M Tuya_

Address and telephone no: 4810 Golfview Blvd
Lehigh Acres FL 33973  239-303-5853

Notary registration no: DD0749267

Commission expires: 02-23-2012

---

Instructions. If the Indemnitor is an individual, type full name, sign on next line, and fill in address, SS #, and DOB. If the Indemnitor is a corporation, type full name, impress with seal, sign on next line along with capacity of officer signing, and fill in corporate address and Fed. Tax ID #. A corporate resolution authorizing the officer to execute this Agreement should also be attached. If partnership, type firm name, with signature of the partner signing on behalf, and fill in firm address and Fed. Tax ID #. Each partner should sign as an Indemnitor.
This instrument should be dated, each signature block filled out completely, and all signatures must be properly acknowledged in the presence of a Notary Public. Attach additional signature blocks and acknowledgement forms if necessary.

## CORPORATE ACKNOWLEDGMENT

Address:
2161 McGregor Blvd. Suite A

Fort Myers, FL 33901

SS # or Fed. Tax ID #: 65-0021668

Indemnitor:
Lodge Construction Company, Inc.

By: _____
Cabot L. Dunn Jr. President
Date of Birth (if individual): _____

STATE OF ........ FL

COUNTY OF ........ Lee          SS

On this ___14th___ day of ___April___, in the year 2009, before me personally came Cabot L. Dunn Jr.

to me known, who, being by me duly sworn, deposes and says that ..... he resides in Punta Gorda, Fl. that ..... he is the President of Lodge Construction Company, Inc. the corporation described in and which executed the foregoing instrument; that ..... he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that ..... he signed h..is. name thereto by like order.

JEANNE M. TUYA
Comm# DD0749267
Expires 2/23/2012
Florida Notary Assn., Inc

Notary Public: _____
Address and telephone no.: 4810 Golfview Blvd Lehigh Acres FL 33973 239-303-5852
Notary registration no: DD0749267
Commission expires: 02-23-2012

## CORPORATE ACKNOWLEDGMENT

Address:
3310 Hanson Street

Fort Myers, FL 33916

SS # or Fed. Tax ID #: 20-0552930

Indemnitor:
Chandler Land Development Corp

By: _____
Cabot L. Dunn Jr. President
Date of Birth (if individual): _____

STATE OF ........ FL

COUNTY OF ........ Lee          SS

On this ___14th___ day of ___April___, in the year 2009, before me personally came Cabot L. Dunn Jr.

to me known, who, being by me duly sworn, deposes and says that ..... he resides in Punta Gorda, Fl. that ..... he is the President of Chandler Land Development Corp the corporation described in and which executed the foregoing instrument; that ..... he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that ..... he signed h..is. name thereto by like order.

JEANNE M. TUYA
Comm# DD0749267
Expires 2/23/2012
Florida Notary Assn., Inc

Notary Public: _____
Address and telephone no.: 4810 Golfview Blvd Lehigh Acres FL 33973 239-303-5853
Notary registration no: DD0749267
Commission expires: 02-23-2012

---

Instructions. If the Indemnitor is an individual, type full name, sign on next line, and fill in address, SS #, and DOB. If the Indemnitor is a corporation, type full name, impress with seal, sign on next line along with capacity of officer signing, and fill in corporate address and Fed. Tax ID #. A corporate resolution authorizing the officer to execute this Agreement should also be attached. If partnership, type firm name, with signature of the partner signing on behalf, and fill in firm address and Fed. Tax ID #. Each partner should sign as an Indemnitor.

This instrument should be dated, each signature block filled out completely, and all signatures must be properly acknowledged in the presence of a Notary Public. Attach additional signature blocks and acknowledgement forms if necessary.