# In the United States Court of Federal Claims

NO. 13-499C; 13-500C; 13-800C; 16-1187

(Filed: December 17, 2019)

(Refiled January 29, 2020)[1]

**THE HANOVER INSURANCE COMPANY, et al.,**                                     **Plaintiffs**

v.

**THE UNITED STATES OF AMERICA**                                                    **Defendant**

### SEALED MEMORANDUM OPINION AND ORDER

**Tapp,** Judge.

    Plaintiff Hanover Insurance Company moves to strike a sealed notice filed by the United States relating to an alleged misrepresentation of witness ▮▮▮▮▮▮▮▮▮. For the reasons set forth below, that motion is **DENIED**.

> *"No lying to the court. And if some misinformation has
> somehow seeped into a proceeding, correct it. Now."*[2]

### Background

    Hanover Insurance Company ("Hanover") seeks monetary damages from the United States related to termination of a contract between the United States and Lodge Construction, Inc. ("Lodge"). (*See* Pl.'s Second Am. Compl., ECF No. 122). From this rudimentary beginning, the current litigation encompasses multiple related monetary claims against the United States, counterclaims of fraud, discovery disputes, and now, witness conduct issues. A detailed recitation of facts relating to the substantive claims and counterclaims is not essential to resolution of the dispute regarding witness ▮▮▮▮▮▮▮▮▮.

    On May 25, 2017, Lodge submitted its response to the United States' Motion for Leave to Amend to Assert an Affirmative Defense. (Lodge's Resp. Opp. Def's Mot. for Leave ("Lodge's Opp."), ECF No. 84). In its Response, Lodge sought to preclude the United States from asserting the defense that Lodge had submitted fraudulent claims: "At worst, with hindsight five years later, some of Lodge's calculations of the time and cost impacts it suffered on the Project have been shown to contain unintentional, honest, understandable, and explainable errors that were made during the difficult task of quantifying a delay and inefficiency claim." (Lodge's Opp. at 1, ECF No. 84). More specifically, Hanover alleged that the United States' Motion to Amend should be denied because the United States failed to plead fraud with sufficient

---

[1] This opinion has been reissued subject to the parties' redactions contained herein.

[2] Phil Pattee, *Nobody Lies to the Court, Not Even Your Client*, Nevada Lawyer Magazine, June 2007, at 41.

particularity. (Hanover's Opp. to Def. Mot. for Leave to Amend. ("Hanover's Opp."), at 14, ECF No. 83). The relevant portion of Hanover's argument provided:

> Here, the Government's only allegation of fraud against Hanover is that:
>
>> Hanover, as Lodge's surety, has attempted to practice fraud by seeking to obtain any funds that might be due to lodge pursuant to Lodge's certified claim and its claim in this Court. Including Lodge's $1.1. million pass-through of [Civil Construction Technologies, Inc. or "CCT"] claims, even though Hanover knows that CCT's claims were settled for $370,000 and that USACE accordingly does not face $1.1 million in liability for CCT's pass-through claims. See USA Motion to Amend, 4/6/17, ECF #68, Ex. A at ¶107.
>
> The Government suggests that Hanover cannot pursue CCT's $1.1. million claim in good faith because Hanover settled that claim for $370,000. Under Hanover's settlement agreement with CCT, it is true that CCT assigned its pass-through claims to Hanover and authorized Hanover to pursue CCT's claims in their entirety. ███████████████████████████████████████████████████████████████████████████████████████████████. The settlement was, in part, achieved because CCT was experiencing substantial financial difficulties and discounted its claims to obtain immediate funds. ████████████. Notwithstanding the CCT assignment to Hanover, Hanover has not asserted its rights under the settlement agreement with CCT to pursue CCT's full claim, either in Hanover's name or CCT's. ████████████. Hanover has only asserted an equitable lien over any recoveries that Lodge may obtain from the Government with respect to its dewatering and delay claims that include the CCT claims.
>
> ████████████████████████████████████, submitted ████████ by Hanover, stated:

2

Also attached to Hanover's response was a copy of the Mediated Settlement Agreement between Hanover and CCT which was filed in the U.S. District Court for the Southern District of Florida (Mediated Settlement Agreement, ECF No. 83-1). ███████████████████████████
████████████████████████████████████████. Other documents and assertions adduced in ████████████████████████████████████████████████████████████████████████████
████████████████████████.

On September 23, 2019, the United States sought leave of the Court to file under seal correspondence dated September 17, 2019. (Def.'s Req. for Leave to File Under Seal, ECF No. 154). In this correspondence, the U.S. Department of Justice's Office of Professional Responsibility ("OPR") wrote to a state bar association concerning ███████ status as a ███████. ████████████████████████████████████. Hanover objected. By Order dated October 15, 2019, the Honorable Margaret M. Sweeney, Chief Judge of the U.S. Court of Claims, granted the United States' motion and entered a Protective Order to shield ███████ from "potential embarrassment and professional harm based on allegations that have yet to be adjudicated…." (Order Granting Def's Mot. at 2, ECF No. 157).

The United States then entered into the record, under seal, the ███████████ OPR letter which informed the Administrator of the ███████████████████████████████
████████████ may have violated state rules of professional conduct by misrepresenting ███ status as ██████████████. █████████████████████
████. In OPR's view, a representation that an individual is ███████ implicates ████████████████████████████. Given that ███ status was as an ███
███████, OPR opined that ███ may have violated the proscription against ████
████████████. (*Id.*) This filing engendered new discord.

On November 17, 2019, Hanover moved, under seal, to strike the OPR letter alleging that the United States' Notice was "contemptible and prejudicial." (Pl.'s Sealed Mot. to Strike at 1 ("Mot. to Strike"), ECF No. 161). Essentially, Hanover claims that the OPR letter was intended to harass ███ and to create potential impeachment should ███ later testify. (*Id.*). In its Response, the United States argues incorrect statements made by the witness to this Court are relevant and that the rules of professional conduct regarding candor to the tribunal necessitated disclosure. (Def.'s Resp. to Pl.'s Mot. to Strike at 9, 10, ECF No. 164).

## Analysis

Hanover vociferously contends that "there is no proper purpose for the Government's filing of a notice and letter concerning ███ and the ███████ proceedings." Pl.'s Reply at 1, ECF No. 165. This opposition is founded in part upon Hanover's persistent claim that the U.S. Court of Federal Claims is not the "appropriate professional authority" to report professional misconduct under Rule 8.3. (Mot. to Strike at 3, ECF No. 161).

Respectfully, the Court disagrees that the ethical obligations of an attorney-witness are to be measured by the narrowest interpretation of the rules of professional conduct. But resolution of Hanover's Motion to Strike does not depend on an interpretation of any "squeal rule" promulgated by the ABA or state bar associations.

The duty of candor is embodied in the Model Rules of Professional Conduct, Rule 3.3 ("Candor Toward the Tribunal"). "Rule 3.3(a)(1) provides that '[a] lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]'" *Level 3 Communications, LLC v. United States*, 724 Fed. App'x. 931, 934 (Fed. Cir. 2018); *see also* Model Rules of Prof. Conduct R. 3.3(a)(3) ("If a lawyer . . . or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal."). The duty of candor is paramount, surpassing generalized notions relating to counsel's obligations to other counsel, and in many respects, to the client.

> This standard reflects the truism that it is essential that members of the bar be trustworthy and that their statements be completely reliable. Public confidence in the integrity of both the bench and the bar requires no less. That confidence, in turn, is essential to the continued vitality of the legal system, as well as to the maintenance of an independent bar. As Justice Frankfurter has stated: "It is a fair characterization of the lawyer's responsibility in our society that he stands 'as a shield' . . . in defense of right and to ward off wrong. From a profession charged with such responsibilities there must be exacted those qualities of truth-speaking …"

*Matter of Mattox*, 35 Fed. Cl. 425, 429 (1996). Consequently, it is an attorney's "continuing duty to inform the Court of any development which may conceivably affect the outcome" of the litigation. *Fusari v. Steinberg*, 419 U.S. 379, 391 (1975)).

Hanover cannot credibly suggest that ████████, and the ████████ settlement agreement between Lodge and Hanover in which ████████ ████████ for Hanover, was not intended to "affect the outcome of this litigation." Hence, Hanover's persistent claim that "there is no valid purpose or reason why the Government filed the Notice" lacks credence. The fact that the United States has not asked this Court to take action regarding ████ representations, or that the Court has previously adjudicated in the United States' favor the issue of amending its pleadings, or even that the United States may be offering the information in contemplation of its future impeachment value, has no impact on the truism that attorneys must not mislead the court including when appearing before the tribunal as witnesses.

> Our adversary system for the resolution of disputes rests on the unshakable foundation that truth is the object of the system's process which is designed for the purpose of dispensing justice. However, because no one has an exclusive insight into truth, the process depends on the adversarial presentation of evidence, precedent and custom, and argument to reasoned conclusions—all directed with unwavering effort to what, in good faith, is believed to be true on matters material to the disposition. Even the slightest accommodation of deceit or a lack of candor in any material respect quickly erodes the validity of the process. As soon as the

> process falters in that respect, the people are then justified in abandoning support for the system in favor of one where honesty is preeminent.

*United States v. Shaffer Equipment Co.*, 11 F.3d 450, 457 (4th Cir. 1993). This duty of candor is "required to protect the integrity of the entire judicial process." *Id*. at 458. The credentials of witnesses, whether it be a medical doctor in a personal injury case who fails to disclose that her license to practice has been suspended, an engineer who misleadingly and falsely suggests possession of an accreditation from an agency which does not exist, or a social worker who never graduated college in a state which mandates a possession of a degree, is not only fair game for opposing litigants but a matter for the court before which the witness appears.

## Conclusion

For these reasons, Hanover's Sealed Motion to Strike is hereby **DENIED**.

**IT IS SO ORDERED.**

s/   David A. Tapp
DAVID A. TAPP, Judge